UBALDO DIBENEDETTO *vs.* COMMONWEALTH & another.[1]

Suffolk.  May 7, 1986. — September 8, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Employment,* Discrimination. *Evidence,* Opinion. *Practice, Civil,* Special
   verdict.

In an action commenced under the Age Discrimination in Employment Act,
   29 U.S.C. §§ 621 et seq. (1982 & Supp. II 1984), by an unsuccessful
   candidate for an advertised position at the University of Massachusetts
   against the Commonwealth and a department chairman at the university,
   the plaintiff's claims against both defendants were properly dismissed
   on the basis of the jury's special verdicts, which were warranted by the
   evidence, to the effect that the Commonwealth did not fail or refuse to
   hire the plaintiff on account of his age and that discrimination by the
   chairman, who had stated to the plaintiff that his department was "looking
   for some younger people," was not a causative factor in the failure of
   the fifty-one year old plaintiff to be hired for the position. [400-402]
In an action by a fifty-one year old candidate for an advertised position at the
   University of Massachusetts at Boston against the Commonwealth and
   a department chairman at the university, who had told the plaintiff that
   the department was "looking for some younger people," alleging that
   the defendants had discriminated against him in employment on account
   of his age, the judge acted within his discretion in excluding, on the
   basis that a sufficient foundation had not been established, the opinion
   testimony of a former professor at the university to the effect that the
   department's chairman was a "very definite force" in the department
   and not a mere "figurehead." [402-403]

CIVIL ACTION commenced in the Superior Court Department
on October 30, 1980.

The case was tried before *Chris Byron,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Daniel F. Featherston, Jr.* (*Mary Elizabeth Beim* with him)
for the plaintiff.

[1] James Ryan.

*Lawrence T. Bench* for the Commonwealth & another.

HENNESSEY, C.J. The plaintiff appeals from a judgment of the Superior Court dismissing his claims under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 et seq. (1982 & Supp. II 1984). We transferred the case here on our own motion, and now affirm.

We summarize the facts. Prior to 1974, the plaintiff was chairman of the department of languages, and professor of Spanish and Italian, at Newton College of the Sacred Heart. This college closed in 1975. After completing a research fellowship at Boston College, the plaintiff accepted a position as lecturer in the Italian department at the University of Massachusetts at Boston (university). In 1979, the plaintiff applied for an advertised tenure track position in the Spanish department at the university. The advertisement stated that the university was seeking an individual with "special training or experience in Applied Linguistics and to serve as Coordinator of first and second year courses in Spanish." Candidates were directed to contact Professor James Ryan, chairman of the Spanish department.

The plaintiff initiated an application for this position by telephoning Ryan. Unbeknownst to Ryan, the plaintiff tape recorded their telephone conversation.[2] Ryan told the plaintiff that the department was "looking for some younger people." The plaintiff was fifty-one years old at the time of his application. Nonetheless, Ryan requested the plaintiff to forward his curriculum vitae and list of linguistics courses for consideration.

The plaintiff, along with five other final candidates, was interviewed for this position by the Spanish department's personnel committee. Ryan, as chairman of the department, was an ex officio, nonvoting member of the committee. The committee ultimately voted to recommend that an offer be extended to another candidate, Professor Esther Torrego, who was then thirty-three years old. Members of the committee testified that the ages of the applicants were not considered by the committee

_____

[2] According to the plaintiff, he had been alerted to Ryan's predisposition on the subject of age through prior conversations with him.

in the selection process. Ryan forwarded the committee's recommendation, with his approval, to the dean, who extended the formal offer to Torrego. Ryan informed the plaintiff that he had not been selected for the position.

The plaintiff brought suit against the university and Ryan in 1980, alleging that the defendants had discriminated against him in employment on account of his age, 29 U.S.C. §§ 621 et seq. (1982 & Supp. II 1984).[3] In their answer, the defendants denied that the refusal or failure to hire the plaintiff was based on his age. The defendant Ryan also counterclaimed against the plaintiff under G. L. c. 272, § 99 Q (1984 ed.), which provides a civil remedy for the unauthorized interception of oral or wire communications.

The case was tried before a jury in May, 1984. At the close of trial, the judge delivered a charge to the jury which in large measure tracked the language of *Loeb* v. *Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979), a decision construing the ADEA. The parties did not object to these instructions. We quote at length from the judge's charge, as it bears directly on the issues raised by the plaintiff on appeal.

The judge instructed the jury that the plaintiff "must persuade you that age was a determining factor in [his] not being hired. It need not be the sole factor for not obtaining the position sought, but rather it must be a determining factor. . . . But

---

[3] Section 623(a) of the ADEA provides, in relevant part: "It shall be unlawful for an employer — (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ."

Section 630(b) defines "employer" as follows: "The term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceeding calendar year . . . . The term also means (1) any agent of such person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State . . . ."

Section 631(a) provides: "The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age but less than 70 years of age."

The parties stipulated at trial that the plaintiff had complied with all statutory prerequisites to the commencement of a civil action under the ADEA. See 29 U.S.C. § 626(c) (1982 & Supp. II 1984).

for his prospective employer's motive to discriminate against him on account of age, would he have been hired for the position for which he had applied?" This "determining factor" standard of causation has been adopted by numerous Federal courts which have interpreted the ADEA. See *Equal Employment Opportunity Comm'n* v. *Prudential Fed. Sav. & Loan Ass'n,* 763 F.2d 1166, 1170 (10th Cir.), cert. denied, 474 U.S. 946 (1985); *Blackwell* v. *Sun Elec. Corp.,* 696 F.2d 1176, 1181 (6th Cir. 1983); *Geller* v. *Markham,* 635 F.2d 1027, 1035 (2d Cir. 1980); *Loeb* v. *Textron, Inc., supra* at 1019.

The judge further instructed the jury that "[y]ou will be warranted . . . in finding th'at the plaintiff was discriminated against because of his age if the plaintiff proves to you — that is, if you are persuaded by the greater weight of the evidence that, first of all, he applied . . . for a job that the Commonwealth was seeking to fill; second, that he was within the protected age bracket of that statute; that is, that he was between the ages of 40 and 70, and if he was below that it would be of no consequence; third, he must prove to you that he was qualified for the job; fourth, that despite his qualifications he was not hired; fifth, a person with equal or inferior qualifications who was younger or outside the protected age group was hired; and sixth, all of the stated reasons given as to why he was not hired were a pretext or cover-up for not hiring him." This instruction tracks the order and burden of proof for disparate treatment cases first enunciated by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792, 802 (1973) (Title VII of the Civil Rights Act of 1964), and generally applied in the age discrimination context by the lower Federal courts. See *Tribble* v. *Westinghouse Elec. Corp.,* 669 F.2d 1193, 1196 (8th Cir. 1982), cert. denied, 460 U.S. 1080 (1983); *Sutton* v. *Atlantic Richfield Co.,* 646 F.2d 407, 411 (9th Cir. 1981); *Loeb* v. *Textron, Inc., supra* at 1016. See also *TWA* v. *Thurston,* 469 U.S. 111, 121 (1985) ("interpretation of Title VII . . . applies with equal force in the context of age discrimination, for the substantive provisions of the ADEA 'were derived *in haec verba* from Title VII' ").

Finally, the judge instructed the jury that both the university and Ryan could be held liable for any causative discrimination. "Now the word 'employer' under that statute includes a state, such as the Commonwealth of Massachusetts, or any of its agencies. It includes the University of Massachusetts, and any agent. And there's no question, I've already told you that the University of Massachusetts is an agency of the Commonwealth, and the defendant James Ryan is an agent of the Commonwealth of Massachusetts. So both Massachusetts and Dr. Ryan could not, or were not permitted by statute to fail or refuse to hire any individual because of his age." See 29 U.S.C. § 630(b) (1982 & Supp. II 1984).

Based on these instructions, the jury were given a special verdict sheet with five questions.[4] After reporting their answers, the jury were discharged. Both sides moved for entry of judgment in their favor, and the judge heard argument on these motions. The plaintiff argued that Question 3 was unnecessary to the judgment as a matter of law and should be disregarded, and that judgment should be entered against both defendants based on the jury's answer to Question 2. In the alternative, the plaintiff argued that the jury's answers to Questions 2 and 3 were inconsistent, and that a new trial should be ordered. Finally, the plaintiff moved for judgment notwithstanding the verdict.

Based on the jury's answers to the questions, the judge dismissed the plaintiff's claims of age discrimination against both defendants, and entered judgment for the defendant Ryan in the amount of $2,000 on his counterclaim under G. L.

[4] The questions, and the jury's answers thereto, are as follows:

"1. Did the Commonwealth fail or refuse to hire the plaintiff because of his age?" Answer: "No."

"2. Did the defendant James Ryan discriminate against the plaintiff because of his age?" Answer: "Yes."

"3. Did the Commonwealth fail or refuse to hire the plaintiff because of the defendant James Ryan's discrimination?" Answer: "No."

"4. Was any discrimination done in willful violation of the law?" Answer: "Yes."

"5. What amount of money should be assessed against the plaintiff to punish him for unlawfully recording the telephone conversation with the defendant James Ryan?" Answer: "$1,000."

c. 272, § 99 Q.[5] The plaintiff appealed. The sole question presented on appeal is whether the judge acted properly in dismissing the plaintiff's claims under the ADEA based on the jury's answers.

We conclude that the judge acted properly in dismissing the claims against the defendants. In entering judgment based on the jury's answers to the questions, the judge was required to make every effort to harmonize the jury's answers.[6] "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *McCue* v. *Prudential Ins. Co.*, 371 Mass. 659, 664 (1976), quoting *Atlantic & Gulf Stevedores, Inc.* v. *Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962) (harmonization rule avoids "collision with the Seventh Amendment"). See *Holder* v. *Gilbane Bldg. Co.*, 19 Mass. App. Ct. 214, 218 (1985). In this case, we do not perceive any inconsistency between the jury's answers, or between their answers and the judge's instructions. Question 1 is directed at the liability of the university, and the jury specifically found that the Commonwealth did not refuse to hire the plaintiff on account of his age. Questions 2 and 3 are directed at the liability of Ryan. Although the jury found in their answer to Question 2 that Ryan harbored a discriminatory motive against the plaintiff, their answer to Question 3 indicates that Ryan's discrimination was not a causative factor in the plaintiff's failure to be hired by the Commonwealth.

The plaintiff argues that Question 3 is irrelevant as a matter of law, and that judgment should have been entered against

---

[5] The $2,000 figure arrived at by the judge represents $1,000 in liquidated damages imposed by statute, and $1,000 in punitive damages awarded by the jury. See G. L. c. 272, § 99 Q. At trial, the plaintiff conceded his liability under this statute, and he does not challenge on appeal the entry of judgment on the defendant Ryan's counterclaim.

[6] The judge and the parties refer to the verdict sheet submitted to the jury as "special questions." Although it is not material to our discussion here, it is clear that the jury were asked to render a "special verdict" under Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), and not answers to special questions coupled with a general verdict under Mass. R. Civ. P. 49 (b), 365 Mass. 812 (1974). See *Commonwealth* v. *Licciardi,* 387 Mass. 670, 675 (1982).

Ryan on the basis of the jury's answer to Question 2. In support of this contention, the plaintiff asserts that an agent is considered an "employer" under § 630(a) of the ADEA, and that an affirmative finding that Ryan "discriminated" against the plaintiff (answer to Question 2) is sufficient to impose liability.[7] The plaintiff confuses the definition of employer with the ultimate issue of causation. Although Ryan is properly considered an "employer" subject to the proscriptions of the ADEA, see *Lettich* v. *Kenway,* 590 F. Supp. 1225 (D. Mass. 1984); *Seider* v. *Canada Dry Corp.,* 17 Empl. Prac. Dec. (CCH) par. 8,369 (S.D.N.Y. 1978), he is only liable under the terms of the statute if he "refuse[d] to hire" the plaintiff because of his age. 29 U.S.C. § 623(a) (1982 & Supp. II 1984). A discriminatory motive, absent a causative impact on the conditions of employment, is not actionable.[8] See *Kumar* v. *Trustees, Univ. of Mass.,* 774 F.2d 1, 20 (1st Cir. 1985) (Campbell, J., concurring), rev'g, 566 F. Supp. 1299 (D. Mass. 1984) (no showing that alleged discrimination by dean corrupted adverse tenure decision of chancellor); *Padway* v. *Palches,* 665 F.2d 965, 967 (9th Cir. 1982) (school superintendent liable for sexual discrimination if trustees relied on him in decision to discharge). The judge adequately explained this principle to the jury: "First you've got to decide was there discrimination because of age. That itself isn't enough. You've got to convince yourself that but for that discrimination he would have been hired." Since the jury specifically found in their answer to Question 3 that the Commonwealth did not "fail or refuse to hire the plaintiff because of the defendant James Ryan's discrimination," the judge appropriately dismissed the plaintiff's

---

[7] Presumably, if Ryan were found to have violated the ADEA, then the Commonwealth would also be held liable on the theory of respondeat superior. See *Miller* v. *Bank of Am.,* 600 F.2d 211, 213 (9th Cir. 1979) (company liable under Title VII where employee discharged for failure to accede to supervisor's sexual advances).

[8] We are not confronted with a case in which a discriminatory animus (e.g., sexual or racial harassment) so pervades the work environment that it in and of itself affects the "terms, conditions, or privileges" of employment, irrespective of any economic injury. See *Meritor Sav. Bank, FSB,* v. *Vinson,* 477 U.S. 57, 62 (1986) (54 U.S.L.W. 4703, 4705 [June 17, 1986]).

claims under the ADEA.[9] As the judge aptly stated in his ruling, "to hold otherwise would mean that non-causal discrimination in a vacuum is a basis for civil liability."

Finally, the plaintiff argues that the judge erred in excluding certain testimony of Alan Francis, a former professor in the Spanish department of the university. Francis testified that Ryan told him that "the department was looking for younger people." The plaintiff's counsel then asked Francis about the degree of deference among department members for Ryan's views as chairman. Upon objection by defense counsel, the plaintiff's counsel made an offer of proof that, if allowed, Francis would testify that Ryan was a "very definite force" in the department and not a mere "figurehead." The judge ruled that there was insufficient foundation for this question, and excluded the testimony. There was no error. The plaintiff did not establish that Francis had any personal knowledge which would support an opinion regarding Ryan's influence in the department; Francis was not a member of the personnel committee, and there was no evidence that he had any familiarity with the hiring process or other administrative concerns of the department chairman. On this basis, and assuming that the elicited opinion would be admissible if a proper foundation were laid, the judge acted within his sound discretion in excluding the testimony. See *Commonwealth* v. *Boyd,* 367 Mass. 169, 182 (1975).

In sum, based upon the judge's unimpeachable instructions to the jury, the evidence in the case, and the jury's answers to the questions, there was no error in the judge's rulings (1) ordering dismissal of the complaint, and (2) denying the plaintiff's motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial. The evidence warranted conclusions that the ultimate authority to hire rested with the dean, and that the personnel committee did not consider age a factor in making its recommendation. The evidence also warranted a conclusion that the Commonwealth did not fail or

[9] Although the judge ordered the dismissal of the plaintiff's complaint, this action had the same practical effect as entry of judgment for the defendants.

refuse to hire the plaintiff because of his age, and the jury found that as a fact in their answer to Question 1. The evidence further warranted a conclusion that the Commonwealth did not fail or refuse to hire the plaintiff because of Ryan's discrimination, and the jury so concluded, as shown in their answer to Question 3. While it may have been open to the jury to decide that Ryan's discriminatory motive somehow tainted the hiring decision, that clearly was not their conclusion. Accordingly, judgment for both defendants was required.

*Judgment affirmed.*