## MARTHA C. LIPCHITZ *vs.* RAYTHEON COMPANY.[1]

Middlesex. February 8, 2001. - July 9, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Anti-Discrimination Law,* Sex, Prima facie case, Burden of proof, Employment. *Employment,* Discrimination. *Practice, Civil,* Instructions to jury. *Evidence,* Statistics.

At the trial of a civil action brought against the plaintiff's employer, alleging that the plaintiff was denied a promotion because of her gender in violation of G. L. c. 151B, § 4, the judge properly denied the employer's motion for a directed verdict where, viewing the evidence in the light most favorable to the plaintiff, the evidence was sufficient to support a finding that at least one of the reasons advanced by the employer for denying the promotion was false, from which the jury could have inferred that the plaintiff was denied a promotion because of her gender. [498-499]

This court declined to adopt an employer's argument that an employee, who alleged that she was denied a promotion because of her gender in violation of G. L. c. 151B, § 4, had the burden of proving that the employer's reasons for not promoting her were a "pretext for discrimination," and that a judge's use of the term "pretext," without more, lowered the employee's burden of proof. [499-501]

At the trial of a civil action brought against the plaintiff's employer, alleging that the plaintiff was denied a promotion because of her gender in violation of G. L. c. 151B, § 4, the employer was entitled to an instruction that the plaintiff had the burden of proving the element of discriminatory animus [501-504], and that discrimination was "the determinative cause" of the adverse employment decision [504-507]; the judge's failure to instruct on these elements was prejudicial, requiring that the case be retried [507].

This court stated that, in future discrimination cases based on indirect evidence, judges should abandon the use of jury instructions that rely on the terms "pretext" and "pretext for discrimination," and that are framed in terms of shifting burdens, and craft instructions that will focus the jury's intention on the ultimate issues of harm, discriminatory animus and causation. [507-508]

On a claim of individual disparate treatment on the basis of gender in violation of G. L. c. 151B, § 4, by an employee against a corporate defendant, the plaintiff's statistical evidence indicating that, until 1993, there were no

[1]We acknowledge receipt of the joint amicus brief filed by the Massachusetts chapter of the National Employment Lawyers Association, the Disability Law Center, Gay & Lesbian Advocates and Defenders, and the Women's Bar Association of Massachusetts.

women in the highest ranks of the corporation was relevant, and was properly introduced in evidence. [508-509]

CIVIL ACTION commenced in the Superior Court Department on June 7, 1995.

The case was tried before *Paul A. Chernoff*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Joan A. Lukey (Mary B. Strother* with her) for the defendant.

*Jody L. Newman (Phyllis A. Flora* with her) for the plaintiff.

*Marisa A. Campagna, Betsy Ehrenberg & James S. Weliky* for National Employment Lawyers Association, Massachusetts Chapter & others, amici curiae, submitted a brief.

SPINA, J. Martha C. Lipchitz brought this civil action in 1995 against her employer, Raytheon Company, alleging that she was denied a promotion to the position of corporate medical director (CMD) because of her gender in violation of G. L. c. 151B, § 4.[2] The jury returned a verdict for the plaintiff and awarded her $500,000 in compensatory damages, including $30,000 in back pay, $150,000 in front pay, and $320,000 for emotional distress. Raytheon filed several posttrial motions, all of which were denied, except for Raytheon's motion for remittitur.[3] The plaintiff moved for attorney's fees and costs and received an award of $225,000 and $20,681, respectively.

Raytheon appealed, and we granted its application for direct appellate review. Raytheon claims that the jury were improperly instructed that the plaintiff was only required to prove "pretext" rather than "pretext for discrimination," and that it was entitled to an instruction that gender was "the determinative factor" in the promotion decision. We do not adopt Raytheon's argument as to how a jury should be instructed on the question of pretext. We conclude, however, that Raytheon was entitled to an instruc-

---

[2]Lipchitz's discrimination claim encompassed both the allegation that she was passed over for promotion in favor of a male colleague, and that she was perceived negatively because she was a woman.

[3]The judge reduced the award for front pay to $70,000 and reduced the award for emotional distress to $225,000.

tion that the plaintiff had the burden of proving the elements of discriminatory animus, and that discrimination was "the determinative cause" of the adverse employment decision as we later define that term. We vacate the judgment and remand the case to the Superior Court for a new trial.

We further recommend that in discrimination cases based on indirect evidence, judges abandon the use of jury instructions that rely on the terms "pretext" and "pretext for discrimination," and that are framed in terms of shifting burdens.

1. *Background Facts.*

In 1975, Lipchitz began working as a physician in the medical department of Raytheon's largest manufacturing plant located in Andover. The department was responsible for performing physical examinations and providing on-site general and emergency medical services for the plant's 5,000 to 7,000 employees. In 1980, Lipchitz was promoted to manager of the Andover plant's medical services department, in which capacity she supervised the plant's medical department and staff. In addition to her regular administrative duties (including, for example, coordinating and monitoring the medical care of individuals receiving workers' compensation, attending meetings, and writing reports), she also took the initiative to study health and safety issues affecting Raytheon's employees, such as substance abuse, and developed teaching modules for plant supervisors on those subjects. At the time of trial in 1997, Lipchitz continued to be employed by Raytheon in this position.

From 1980 until 1993, Lipchitz reported directly to Andover plant managers, and had a "dotted-line" supervisory relationship with the CMD, Stephen Alphas.[4] Throughout those years, Lipchitz received highly favorable written performance reviews, the vehicle by which recommendations for merit increases generally were made. Lipchitz's favorable evaluations resulted in a salary that was at the upper end of the salary grade for her

---

[4] In 1993, a reorganization of the medical department brought Lipchitz and the other full-time plant physicians directly under the supervision of the CMD.

position, as well as frequent bonuses and, eventually, stock options.[5]

In addition to the performance evaluations, Lipchitz wrote annual or biennial self-evaluations in which she catalogued her contributions and accomplishments, and noted her strong desire to advance into a corporate position. The only corporate position available to a practicing medical doctor was the CMD position, and as the years went by Lipchitz made known her desire to fill that position when Alphas retired. Her performance evaluations noted both her desire for advancement and her capacity for a management position.

In 1988, after he underwent bypass surgery, Alphas continued in the CMD position but his superiors raised with him the question of who would succeed him. In 1989, Alphas hired Harry Azadian as a full-time plant physician. Azadian was a long-time acquaintance and colleague of Alphas and had been working one day a week at Raytheon since 1977. Lipchitz presented evidence to suggest that both the decision to offer Azadian the full-time position and the manner in which he was hired reflected Alphas's expectation that Azadian would be his successor. There was additional evidence to suggest that this view was shared by Azadian.

A job description for the position was written in 1990 and required that the CMD be "[b]oard [c]ertif[ied] in an appropriate area of specialization." Azadian was board certified as a general surgeon; Lipchitz was not board certified. Alphas, the outgoing CMD, had not been board certified.

Raytheon argued that its reason for passing over Lipchitz in favor of Azadian was primarily difficulties over the years between Lipchitz and Alphas, the CMD, as well as between her

---

[5]Job positions were assigned a salary grade from one to eighteen. Lipchitz was at grade fourteen, as was Harry Azadian both while he was a plant physician and after his promotion to acting CMD. Stephen Alphas began in 1977 at grade fourteen but reached grade seventeen some twelve years later. The CMD job description written in 1990 described the job as being grade seventeen. The range of salaries in each grade was so broad that there was considerable overlap between the salaries in grades fourteen and seventeen.

and various managers within the Andover plant.[6] Lipchitz had pushed hard for certain opportunities she deemed necessary for her professional advancement, but the response she received from Andover plant managers was negative and, on occasion, patronizing.[7] At the same time, she tended to rebuff requests from Alphas and other managers to take on additional responsibilities, requests that might have been viewed by them as ways to earn opportunities for advancement. Her superiors perceived her as unwilling to take on extra work without asking for additional compensation, and unwilling to be a "team player."[8] These perceptions were reflected in notations made on documents relevant to, and contemporaneous with, the promotion decision. Testimony regarding the difficulties with her superiors was corroborated by Lipchitz's desk diary in which she had recorded her disagreements with various managers and supervisors over the years. These difficulties were not mentioned in Lipchitz's annual reviews or in her self-evaluations.

Alphas retired in January, 1994, and Azadian was promoted shortly after. Rather than receive a full promotion to CMD and a salary increase to that position's salary grade, Azadian was appointed the acting CMD and his salary remained unchanged. The vice-president of human resources testified that Azadian was appointed to this provisional position because Alphas's retirement was the opportunity he had been awaiting to consider reorganizing the medical department or outsourcing medical services. It was possible that such a change would eliminate the the CMD position. Testimony revealed, however, that as acting CMD, Azadian had all the authority of the CMD, and he

---

[6]Alphas had, on at least one occasion, referred to Lipchitz as "big-breasted Martha" and a "bitch."

[7]Lipchitz testified that one manager asked, "Why can't you just stay where you are and polish your pearl and if you're lucky maybe some day somebody will notice."

[8]For example, Alphas testified that on one occasion, Lipchitz balked at a clear directive of his regarding a temporary deployment of her staff to help out at another plant. Lipchitz contended that the dotted-line supervisory relationship did not give Alphas the authority to give such an order. On another occasion, she refused to sign a medical department petition he had initiated as CMD recommending that the plants be smoke-free working environments. At the time Lipchitz did not explain her refusal to sign, but at trial stated simply that she did not sign petitions.

expressed his belief that his title and salary had been on hold because of the litigation.[9]

2. *Sufficiency of the Evidence on Liability.*

After the close of the plaintiff's evidence, Raytheon moved for a directed verdict. On appeal, it argues that there was insufficient evidence to support a finding of pretext at the third stage of the now-familiar order of proof originally set out in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), and adopted by us in *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130 (1976).

The plaintiff presented sufficient evidence from which a reasonable jury could find that at least one of Raytheon's reasons was false and from this it properly could have inferred that she was not promoted because of unlawful discrimination. See *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 118 (2000). The reasons Raytheon presented for its decision were Lipchitz's lack of board certification, and the personal and workstyle difficulties she had with members of management. However, where Lipchitz's performance evaluations included comments suggesting that she was qualified to hold a management position, the jury could have found that the question of board certification was not the reason Lipchitz had not been promoted, and in other circumstances, the lack of board certification might have been accommodated.[10] In addition, the jury could have credited Lipchitz's contention that the difficulties she had with Alphas, the CMD, and her Andover managers were not the result of her personality and workstyle and therefore, were the result of gender bias. If the jury found Lipchitz to be a credible witness, and discredited the testimony of Raytheon's witnesses, the jury could reasonably have

---

[9]Lipchitz filed her administrative claim with the Massachusetts Commission Against Discrimination a few weeks after Azadian was promoted.

[10]In its closing, Raytheon argued to the jury that the question of qualifications went only to the matter of whether Lipchitz had satisfied her burden of proof in the first stage. Raytheon does not appeal from the jury's finding that the plaintiff satisfied that burden of proof, but folds the matter of qualifications into its argument that there was insufficient evidence to support a finding of liability. The issue of qualifications was sufficiently pervasive at trial to have led the judge to describe Raytheon's articulated reason as "legitimate factors involving qualifications."

believed that, had she been a man, her strict adherence to her principles and the official lines of command and her determination about advancing her career, might have been viewed with admiration rather than resentment.

"The ultimate issue of discrimination, raised by the [parties'] conflicting evidence as to the defendant['s] motive, is not for a court to decide on the basis of [briefs and transcripts], but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 445 (1995). See *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 16 (1998). Viewing the evidence in its light most favorable to the plaintiff, the evidence was sufficient to support a finding that at least one of the reasons advanced by Raytheon was false, from which the jury could have inferred that the plaintiff was denied a promotion because of her gender. See *Abramian* v. *President & Fellows of Harvard College*, *supra* at 118. The motion for a directed verdict was properly denied.

We do not address Raytheon's argument that the verdict was against the weight of the evidence because we are remanding for a new trial due to errors in the jury instructions.

3. *Jury Instructions.*

(a) *Pretext.* Raytheon submitted a written request for an instruction that Lipchitz had the burden of proving that Raytheon's reasons for not promoting her were a "pretext for discrimination." It renewed the request after the judge charged the jury and before the jury retired to deliberate. See Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974). The issue was preserved for appellate review. *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 678-679 (1980).

Raytheon argues that the judge's failure to give its requested instruction ("pretext for discrimination") and to use instead the term "pretext," without more, lowered Lipchitz's burden in the third stage.[11] Raytheon additionally argues that the jury's inability to reach a consensus on question 4, one of the special

---

[11]The judge did incorporate some of Raytheon's requested language into his instructions. However, viewed as a whole, the import of the instructions was that the plaintiff had met her burden with proof of "pretext," and "pretext" alone, as the plaintiff seems to concede. The judge instructed the jury, "In this

questions that the judge asked the jury to answer, is evidence of this flaw in the instructions.[12] Lipchitz counters that because Massachusetts is a "pretext only" jurisdiction, *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, *supra* at 443, Raytheon was not entitled to an instruction that she prove "pretext for discrimination" because it would have been an incorrect statement of the law.

The phrase "pretext for discrimination" implies that the plaintiff must prove not only that a reason given by the employer

[the third] stage, the burden is on the plaintiff to prove by a fair preponderance of the evidence that the reasons given by the defendant were not the real reasons for failing to promote her . . . but were a pretext for gender discrimination. Under the laws of the Commonwealth, the plaintiff may satisfy the plaintiff's burden by proving that the employer's articulated reason or reasons was not the real reason or reasons for the hiring decision."

[12]The four questions of the special jury verdict form that went to the issue of liability, Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), read as follows:

"1. Did the plaintiff prove by a preponderance of the evidence that:

"A. The Plaintiff was qualified for promotion to the position of Acting Corporate Medical Director? [Answer: Yes]

"If yes, go to B

"If no, go no further

"B. Another person with lesser or similar qualifications received appointment to the position of Acting Corporate Medical Director? [Answer: Yes]

"If yes, go to 2

"If no, go no further

"2. Did the Defendant produce credible evidence articulating a legitimate, non-discriminatory reason as its real reason for not appointing the Plaintiff to the position of Acting Corporate Medical Director? [Answer: Yes]

"If yes, go to 3

"If no, go to 4

"3. Did the Plaintiff prove gender discrimination by proving by a preponderance of the evidence that the reason given by the Defendant was a pretext in that it was not the real reason for not appointing the Plaintiff to the position of Acting Corporate Medical Director? [Answer: Yes]

"If yes, go to 4

"If no, go no further

"4. This is an advisory question which does not effect [*sic*] the ultimate verdict and is presented for administrative purposes only. Did the Plaintiff prove by a preponderance of the evidence that the Defendant's actual motivation when filling the position was gender discrimination? [Answer: handwritten on slip, 'Could not reach a 10/2 decision.']"

for the adverse decision was false, but that the reason was given to cover a discriminatory animus. Our decisions do not require this. See *Abramian* v. *President & Fellows of Harvard College*, *supra* at 118. Cf. *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997). If the employee were able to prove by direct evidence that discriminatory animus motivated the decision, she would not have to rely on the indirect method of proving animus by disproving at least one of the employer's articulated, nondiscriminatory reasons. Compare *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination*, 431 Mass. 655 (2000), with *Buckley Nursing Home, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 20 Mass. App. Ct. 172 (1985).

In an indirect evidence case, if the fact finder is persuaded that one or more of the employer's reasons is false, it may (but need not) infer that the employer is covering up a discriminatory intent, motive or state of mind. See *Riffelmacher* v. *Police Comm'rs of Springfield*, 27 Mass. App. Ct. 159, 165 (1989). Permitting, but not requiring the fact finder to draw the inference strikes the proper balance by holding the plaintiff to her ultimate burden without requiring her to produce direct evidence of discriminatory animus, a form of evidence that, we recognize, rarely exists. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, *supra* at 137. Cf. *Sarni Original Dry Cleaners, Inc.* v. *Cooke*, 388 Mass. 611, 615-616 (1983). That inference, combined with the evidence adduced to meet the employee's burden of proof under the first stage of *McDonnell Douglas*, permits the fact finder to conclude that the employee has satisfied her ultimate burden of proving that the decision was made "because of" the unlawful discrimination as G. L. c. 151B, § 4(1), requires.[13] See *Abramian* v. *President & Fellows of Harvard College*, *supra* at 118.

(b) *Discriminatory animus*. Although a "pretext for discrimination" instruction was not required, we agree that the instruc-

---

[13]General Laws c. 151B, § 4 (1), provides that, "It shall be an unlawful practice . . . [f]or an employer . . . because of the . . . sex . . . of any individual to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

tions on the issue of pretext, given without the benefit of any instructions on discriminatory animus, were, for the reasons that follow, erroneous. (The special verdict form the jury were asked to complete also reflected the error.)

The statute sets out four elements: membership in a protected class, harm, discriminatory animus, and causation. See note 13, *supra.* See also *Dahill* v. *Police Dep't of Boston, ante* 233, 243 (2001) (membership in protected class and causation); *Abramian* v. *President & Fellows of Harvard College, supra* at 117 (animus); *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 662-663 (1996) (harm). It was undisputed that Lipchitz was a member of a protected class because she was a woman, and was harmed by an employment decision when Raytheon bypassed her for promotion. We therefore turn our attention to the element of discriminatory animus.

As we have said, in an indirect evidence case, we permit the fact finder to infer discriminatory animus (and causation) from proof that the employer offered a false reason for the adverse employment decision. Permitting the fact finder to infer discriminatory animus from proof that the employer has advanced a false reason does not, however, eliminate the plaintiff's burden to prove this essential element. See *School Comm. of Boston* v. *Labor Relations Comm'n*, 40 Mass. App. Ct. 327, 334 (1996). Stated differently, the "indirect evidence" moniker derives from the type of evidence (pretext) that may establish one or both statutory elements (discriminatory animus and causation).[14] Cf. *Johansen* v. *NCR Comten, Inc.*, 30 Mass. App. Ct. 294, 299-300 (1991). Pretext does not thereby become the element.

Here, the entire import of the instruction on Lipchitz's burden

---

[14]Proof that one or more of the employer's stated reasons is false may be accomplished by offering some direct evidence of discriminatory animus. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc., supra* at 445. While this evidence may be insufficient to satisfy the evidentiary threshold for so-called "direct evidence" cases we recently set out in *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination*, 431 Mass. 655, 669-670 (2000), it may be sufficient to permit the fact finder to conclude that at least one of the employer's reasons is false, and therefore to support an inference that the adverse employment action was made because of discrimination. The ultimate issue of discrimination does not differ depending on the type of proof available to the plaintiff.

to establish liability was whether she had proved "pretext," not whether she had proved that Raytheon had refused to promote her "because of . . . [her] sex." G. L. c. 151B, § 4 (1). See *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 767 (1986). Cf. *Carter* v. *Comm'r of Correction*, 43 Mass. App. Ct. 212, 226 (1997). The instruction transformed "pretext" into an essential element of the plaintiff's case. The error was compounded by the additional instruction that if Lipchitz established that the reasons given by Raytheon were not its "real reason," she had established Raytheon's liability and the jury were to move on to the question of assessing damages.[15] See *Abramian* v. *President & Fellows of Harvard College, supra* at 117-118. The only "instruction" the jury received on discriminatory animus was given in connection with special question 4, an advisory question, which the judge described to the jury as having "no effect" on the verdict.[16]

---

[15]This case was tried more than two years before our decision in *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107 (2000), in which we clarified (1) that pretext alone was sufficient to support a finding of liability and that the plaintiff was not required, in addition, to furnish evidence of actual discrimination once the employer advanced its nondiscriminatory reasons, and (2) that a showing of pretext permitted, but did not compel, the inference that the adverse employment action was because of discrimination. *Id.* at 118. We do not criticize the judge for having to deal with the uncertainty generated by our decision in *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437 (1995), on these matters.

[16]The judge instructed: "I have asked the jury an advisory question, and please understand that the answer to this question in no way affects the outcome of this trial, [and is] for administrative purposes only. I am asking you to consider whether or not the plaintiff has proven by a preponderance of the evidence that the defendant had a discriminatory motive in making its hiring decision? Here the jury may consider indirect and circumstantial evidence in determining whether the plaintiff has proven that the hiring decision was motivated by gender discrimination. . . . Did the plaintiff prove by a preponderance of the evidence that the defendant's actual motivation when filling the position, was gender discrimination?" Jurors were unable to agree on an answer to special question 4, which illustrates the problem at hand. See note 12, *supra*.

In response to a question from the jury with respect to this question, the judge further instructed the jury that an actual motive to discriminate required a "conscious motive toward gender bias." Although special question 4 was advisory, this instruction was error. Despite heightened awareness about workplace diversity and discrimination, an employer will not necessarily be aware of his or her bias. Stereotypical thinking, for example, involves

The judge should have instructed that Lipchitz was required to prove that Raytheon acted with a discriminatory intent, motive or state of mind. As we said in *Abramian* v. *President & Fellows of Harvard College, supra,* decided two years after the trial in this case, juries should be instructed that this element of proof may be satisfied by circumstantial evidence, such as the inference of discriminatory animus that may be drawn from proof that one or more of the reasons advanced by the employer is false.

(c) *Causation.* Raytheon also requested an instruction that Lipchitz had to persuade the jury that her gender was *"the determining factor* in the decision not to promote her to Acting CMD," and that *"but for"* a motive to discriminate . . . she would have been promoted" (emphasis added). Raytheon argues that without this instruction, the jury were ill-equipped to weigh the factors involved in the promotion decision if they were persuaded that some of its reasons were legitimate and some were discriminatory. Lipchitz contends that Raytheon was not entitled to this instruction because it is only applicable in cases in which plaintiffs present strong, direct evidence of discrimination and further, that if the instruction was necessary, that Raytheon should bear the burden of proof. See *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination, supra* at 670. This issue was preserved for review. See *Flood* v. *Southland Corp.,* 416 Mass. 62, 66 (1993). We agree with Raytheon that in indirect evidence cases the plaintiff must prove that the defendant's discriminatory animus was the determinative cause, which we describe below, in bringing about the adverse decision.

---

categorizing people on the basis of broad generalizations, not necessarily accompanied by deliberate reflection or conscious thought. Employment decisions that are made *because of* stereotypical thinking about a protected characteristic or members of a protected class, whether conscious or unconscious, are actionable under G. L. c. 151B. See *Thomas* v. *Eastman Kodak Co.,* 183 F.3d 38, 42 (1st Cir. 1999), cert. denied, 528 U.S. 1161 (2000) ("Title VII's prohibition against 'disparate treatment because of race' extends both to employer acts based on conscious racial animus and to employer decisions that are based on stereotyped thinking or other forms of less conscious bias"). See also *Hazen Paper Co.* v. *Biggins,* 507 U.S. 604, 610 (1993) (unlawful employment practice under Federal age discrimination law to make decisions on "basis of inaccurate and stigmatizing stereotypes").

Under the plain language of G. L. c. 151B, § 4, liability at-
taches when an adverse employment decision is made "because
of" discrimination.[17] We have never had occasion to decide
whether jurors must be instructed on the statute's causal link.
Such a requirement is, however, implicit in our decisions. See,
e.g., *Dahill* v. *Police Dep't of Boston, supra* (plaintiff must
prove causation); *Melnychenko* v. *84 Lumber Co.,* 424 Mass.
285, 294 (1997) (ruling for defendant was proper where judge
found that retaliation was not "a determinative factor" in
discharge); *MacCormack* v. *Boston Edison Co., supra* at 662
n.11 (evidence would not have been sufficient to meet "but
for" burden of causation); *Brunner* v. *Stone & Webster Eng'g
Corp.,* 413 Mass. 698, 705 (1992) ("but for" causation is "es-
sential element of [plaintiff's] case"); *DiBenedetto* v. *Com-
monwealth,* 398 Mass. 395, 400 (1986), cert. denied, 479 U.S.
1092 (1987) (discrimination was "not a causative factor" in hir-
ing decision); *Trustees of Forbes Library* v. *Labor Relations
Comm'n,* 384 Mass. 559, 562-563 (1981) (retaliation must have
been "but for cause")[18]; *Smith College* v. *Massachusetts
Comm'n Against Discrimination,* 376 Mass. 221, 226-227
(1978) (sex must have been "a determinative cause"). See also
*Buckley Nursing Home, Inc.* v. *Massachusetts Comm'n Against
Discrimination, supra* at 179. Cf. *Drinkwater* v. *School Comm.
of Boston,* 406 Mass. 756, 762 (1990) (upholding race-conscious
hiring plan against charge of reverse discrimination in part

---

[17]"Because of" under c. 151B triggers liability at the same level of causa-
tion for all claims of employment discrimination, whether the evidence
presented by the plaintiff is "indirect" (in so-called "pretext" cases) or
"direct" (in so-called "mixed motive" cases). Cf. *Wallace* v. *Ludwig,* 292
Mass. 251, 254-255 (1935). With respect to the element of causation, the
distinction between "direct" and "indirect" evidence cases is not the degree
of causation, but who bears the burden of proving it.

[18]In *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination,
supra,* we held that, where a plaintiff presents strong, direct proof that an
unlawful consideration was a factor in the employment decision, the defendant,
to escape liability, must prove that it would have made the same decision
without the unlawful consideration. *Id.* at 669-670. We recognized that this
holding overruled that portion of *Trustees of Forbes Library* v. *Labor Rela-
tions Comm'n,* 384 Mass. 559, 565-566 (1981), that held that the burden of
proof in a "direct evidence" case remained with the plaintiff. Our *Wynn &
Wynn* decision did not, however, reject our earlier analysis regarding the
degree of causation mandated by the statutory phrase "because of."

because "race was only *a factor*" officials were to consider [emphasis added]). In addition, we have approved jury instructions that have included language describing this causal link. See *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.), supra* at 12 n.18 ("plaintiff has the burden to prove . . . that but for plaintiff's handicap, the defendant would not have terminated the plaintiff"); *DiBenedetto* v. *Commonwealth, supra* at 401 (jury instructed that they must be convinced that "but for" discrimination, plaintiff would have been hired).[19]

The failure to alert the jury to the requirement that Lipchitz prove a causal link between Raytheon's alleged discriminatory animus and its decision to not promote her, was error.[20] It was prejudicial because here, the evidence suggested several reasons for Raytheon's decision to pass over Lipchitz, some of which the jury could have found credible, some of which the jury might have found not credible.

We note, however, that to meet her burden of proof that discrimination was the determinative cause of the promotion decision, Lipchitz was not required to disprove every reason articulated by the defendant or suggested in the evidence. See

---

[19]Our decisions have described the causal element in various ways, which essentially have been the proximate or determinative cause standard used in negligence cases. A cause is the determinative cause if it was the active efficient cause in bringing about the adverse employment action. See *Jussim* v. *Massachusetts Bay Ins. Co.*, 415 Mass. 24, 27 (1993), citing *Lynn Gas & Electric Co.* v. *Meriden Fire Ins. Co.*, 158 Mass. 570, 575 (1893) (proximate cause). In other words, the plaintiff must prove by a preponderance of the credible evidence that the defendant's discriminatory animus contributed significantly to that action, that it was a material and important ingredient in causing it to happen. Cf. *Nass* v. *Duxbury*, 327 Mass. 396, 400 (1951). That a defendant's discriminatory intent, motive or state of mind is "the determinative cause" does not imply the discriminatory animus was the only cause of that action. See *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.), supra* at 7-9 ("because of" does not mean "solely because of"). See also D.B. Dobbs, Torts § 168, at 410 (2001) ("Nothing is the result of a single cause in fact. The but-for test does not say otherwise").

[20]The statutory language is quite clear, and might have sufficed had it been included verbatim in the charge. The judge's paraphrase of the statute at the start of the charge that "[a]ccording to the laws of the Commonwealth, and in particular, Chapter 151B, it is an unlawful practice to discriminate on the basis of gender" was not adequate, particularly where the only other reference to a causal connection was the somewhat oblique statement that "[t]he plaintiff claims that she was qualified for the position but bypassed because she was a woman."

*Dartt* v. *Browning-Ferris Indus., Inc. (Mass.), supra* at 9. She could meet her burden by persuading the fact finder that it was more likely than not that at least one reason was false. But see *Wheelock College* v. *Massachusetts Comm'n Against Discrimination, supra* at 137 (remanding for rehearing because commissioner had only addressed three of the four reasons offered by defendant). From such proof the fact finder could infer that Raytheon's discriminatory animus was the determinative cause of the adverse employment decision.

The plaintiff is correct that reversible error will not be found merely by "consideration of [a] fragment [of an instruction] which may be open to criticism." See *Haven* v. *Brimfield,* 345 Mass. 529, 533 (1963). Reversible error may lie, however, where the error of a "fragment" reflects the error of the instructions read as a whole. We are presented here with a jury charge that failed to instruct the jury adequately on two necessary elements under the statute. The error was compounded by the judge's incorrect instruction that, if Lipchitz proved that Raytheon had lied, she had prevailed in the litigation. See *Abramian* v. *President & Fellows of Harvard College, supra* at 117-118. Considered as a whole, *Lockwood* v. *Boston Elevated Ry.,* 200 Mass. 537, 544 (1909), the charge failed to "clearly, adequately, and correctly explain[] to the jury the principles that ought to guide and control their action." *Torre* v. *Harris-Seybold Co.,* 9 Mass. App. Ct. 660, 678-679 (1980), and cases cited. The failure to instruct on these elements was prejudicial and the case must be retried. See *Tuttle* v. *McGeeney,* 344 Mass. 200, 207-208 (1962).

4. *Issues on Remand.*

We take this opportunity to discuss issues that are likely to arise at retrial.[21]

(a) *Jury instructions.* Jury instructions drawn directly from the order of proof originally described in *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792 (1973), have been problematic. Decided in the context of the Federal antidiscrimination law, *McDonnell Douglas* represented an enormous step forward in employment discrimination law by providing plaintiffs who

---

[21]Because of our order for a new trial, we do not reach Raytheon's challenge to the damages award.

lacked "smoking gun" evidence a method to present — and prove — their cases, and we have used its order of proof in analyzing cases brought under our own anti-discrimination statute since 1976. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 138 (1976). However, this "analytical framework" was established in the context of summary judgment "to give judges a method of organizing evidence and assigning the burdens of production and persuasion in a discrimination case." *Loeb* v. *Textron, Inc.*, 600 F.2d 1003, 1016 (1st Cir. 1979). It "was not written as a prospective jury charge," *id.*, and is ill-suited to the task: By the time of trial, a plaintiff will have discovered the employer's reasons for the adverse action, and may present them in his or her case-in-chief, together with evidence that one or more of the reasons is false.

We see no reason to burden the jury with terms like "mixed-motive" and "pretext" or with rules regarding shifting burdens, all of which "have taken on lives of their own, independent of their connection to the underlying theories of liability that gave them birth." See *Miller* v. *Cigna Corp.*, 47 F.3d 586, 599 (3d Cir. 1995) (Greenberg, J., concurring in part). See also Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 11.5.1 (1997 ed.); Model Civil Jury Instructions for the District Courts of the Eighth Circuit § 5.01 (1999 ed.). The burden shifting rules involve questions of law more appropriately left to the trial judge to decide. See, e.g., *Greenway* v. *Buffalo Hilton Hotel*, 143 F.3d 47, 52-53 (2d Cir. 1998). We encourage trial judges to craft instructions that will focus the jury's attention on the ultimate issues of harm, discriminatory animus and causation in accordance with this opinion.

(b) *Admissibility of "statistical" evidence in claims of individual disparate treatment.* Raytheon argues that the plaintiff's evidence regarding the gender composition at its highest ranks was statistical evidence that was both inadmissible and irrelevant. It argues that the evidence lacked the necessary foundation of labor market statistics reflecting the gender composition of those seeking such positions, and that it was irrelevant because the evidence related to non-medical positions.

The evidence indicated that until 1993, there were no women

in the corporate ranks of the company. Such numbers are relevant, and may be properly introduced in a disparate treatment case, see *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 769-770 (1986), because to the extent they suggest that the highest ranks of an employer's organization are closed to members of a protected class, they may support an inference that the particular decision was tainted by an unlawful bias. See *Buckley Nursing Home, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 20 Mass. App. Ct. 172, 179 (1985) (aberrant hiring practice "supplemented by the statistical proof" supported conclusion that explanation for failing to hire plaintiff "was only a pretext for unlawful discrimination"). A defendant is free to rebut the evidence, as Raytheon did here, by introducing its own labor market statistics.

The judgment is reversed, the verdict set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*