The parties cross appeal from a judgment entered after a jury trial. The case concerns disputes that arose following the departure of Lawrence Shutzer from Red Rock Trading Co., Inc. (Red Rock). We affirm.
1. Background. We briefly summarize the facts as the jury could have found them. In 2011, Ronald Petrucci and Shutzer agreed to form Red Rock, an outerwear clothing company, with each becoming a fifty percent owner of the newly-formed company. Red Rock marketed its garments under the "Avalanche" label, which it licensed from Avalanche Licensing, LLC (Avalanche), a company owned by Petrucci and his family.
In November, 2014, Shutzer, on the one hand, and Petrucci, Avalanche, and Red Rock, on the other hand, entered into a stock purchase agreement whereby Shutzer was to receive $2.9 million for his fifty percent stock interest in Red Rock, subject to certain adjustments based on Red Rock's financial performance in 2014. Consistent with the terms of the agreement, Shutzer tendered his stock and resigned from Red Rock. However, because Shutzer took and attempted to use Red Rock's designs for the fall of 2015 (fall 2015 designs) for the benefit of his new company, Salem Apparel Company (Salem), the plaintiffs did not pay Shutzer for his stock.
In March, 2015, the plaintiffs commenced the present action against Shutzer, Salem, and several former employees of Red Rock, asserting a number of claims stemming primarily from the misappropriation of the fall 2015 designs. Among other claims, the plaintiffs asserted that the misappropriation breached the stock purchase agreement, violated G. L. c. 93A, breached a fiduciary duty owed to the plaintiffs, and constituted civil conspiracy. The plaintiffs also moved for a preliminary injunction against Shutzer and two former Red Rock employees, prohibiting their further use of the fall 2015 designs. The injunction was allowed. Shutzer counterclaimed, alleging that the plaintiffs had breached the stock purchase agreement by failing to pay him for the stock that he had transferred.
Shutzer continued to market the fall 2015 designs through Shutzer's new company, Salem, and in October, 2015, Shutzer was held in contempt. The judge (contempt judge) made certain findings that were binding on the parties for the subsequent jury trial. In particular, the contempt judge found that Shutzer had arranged to manufacture "knock-off" designs based on the fall 2015 designs and had attempted to sell the designs under the Salem brand. The contempt judge also found that no sales based on the misappropriated designs had occurred and the plaintiffs sustained no damages as a result of the misappropriation.
A jury trial was held over three weeks in April, 2016. The jury were instructed that the prior findings from the contempt proceedings were binding. In addition, the parties stipulated that the value of Avalanche and its logo were not diminished as a consequence of any alleged misconduct by the defendants.
The jury awarded the plaintiffs $300,000 on the c. 93A claim, which the jury doubled; $75,000 on the breach of fiduciary duty claim; and $7,750 on the civil conspiracy claim. In addition, the jury awarded Shutzer approximately $2.3 million on his counterclaim for breach of the stock purchase agreement.
Postverdict motions ensued regarding the jury's answers to particular questions on the special verdict form. The plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV), seeking a determination that Shutzer breached the stock purchase agreement because he had misappropriated the fall 2015 designs. The trial judge denied that motion, but allowed Shutzer's JNOV motion that the plaintiffs breached the agreement, resolving the apparent inconsistency between the jury's answer to jury question five on the special verdict form (that the plaintiffs did not breach the agreement) and jury question eight (that the plaintiffs owed approximately $2.3 million to Shutzer pursuant to the agreement nonetheless). The trial judge also denied the plaintiffs' motion to double the jury's awards for breach of fiduciary duty and civil conspiracy. The trial judge then issued judgment in favor of the plaintiffs on their c. 93A, breach of fiduciary duty, and civil conspiracy claims, and in favor of Shutzer for the plaintiffs' breach of the stock purchase agreement. This appeal followed.
2. Discussion. The parties raise numerous arguments on appeal. We address each in turn.
a. Breach of contract. The plaintiffs argue that, because Shutzer had previously been found to have misappropriated the fall 2015 designs, the jury were required to find that Shutzer breached the stock purchase agreement. Accordingly, the plaintiffs contend that the trial judge erred in denying their motion for JNOV on their breach of contract claim against Shutzer, and further erred in harmonizing the inconsistent jury answers on the verdict form.
i. The plaintiffs' JNOV motion. On review of a trial court's denial of a JNOV motion, we "construe the evidence in the light most favorable to the nonmoving party and disregard that favorable to the moving party" to "evaluate whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant].' " O'Brien v. Pearson, 449 Mass. 377, 383 (2007), quoting from Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 121 (1992).
Construing the evidence in the light most favorable to Shutzer, the jury reasonably could have determined that Shutzer did not breach the stock purchase agreement because the jury reasonably could have viewed Shutzer's misappropriation to be separate from Shutzer's obligations under the stock purchase agreement. The terms of the agreement neither mention the fall 2015 designs nor prohibit Shutzer from competing with Red Rock. On its face, the agreement is directed to the transfer of stock from Shutzer to the plaintiffs. It provides that it is a "binding agreement between [Shutzer] and [Petrucci] in connection with the redemption by [Red Rock] of [Shutzer's] shares in Red Rock." As contemplated by the agreement, Shutzer tendered his fifty percent ownership interest in Red Rock and resigned from his position at Red Rock. Accordingly, the jury reasonably found that Shutzer performed his contractual obligations and did not breach.
Additionally, the jury could reasonably have found that Shutzer's misappropriation did not undermine the essential terms of the agreement by devaluing the stock that he transferred. The evidence demonstrated that the value of Red Rock's stock was not dependent on the fall 2015 designs. In fact, even though Shutzer misappropriated the fall 2015 designs, Red Rock exceeded its 2015 sales projections. Indeed, the contempt judge found the plaintiffs sustained no damages as a consequence of the misappropriation (and this finding was binding on the jury). In addition, the parties stipulated that Avalanche suffered no harm as a result of any wrongful conduct by Shutzer. The lack of financial harm to Red Rock from the misappropriation further supports the jury's reasonable conclusion that the value of the company (and the stock that Shutzer tendered pursuant to the agreement) were not materially affected by the misappropriation.
For these reasons, we conclude that the evidence presented at trial, viewed in the light most favorable to Shutzer, does not compel the finding that Shutzer breached the stock purchase agreement. Accordingly, the trial judge did not err in denying the plaintiffs' motion for JNOV with respect to their breach of contract claim.
ii. Harmonization of the jury's answers. We also disagree with the plaintiffs' assertion that the trial judge erred in harmonizing the jury's arguably inconsistent answers on the special verdict form.
"In entering judgment based on the jury's answers to the questions, the judge [is] required to make every effort to harmonize the jury's answers." DiBenedetto v. Commonwealth, 398 Mass. 395, 400 (1986). When there is a reasonable view of a case that makes a jury's answers to special interrogatories consistent, they must be resolved in that way. See McCue v. Prudential Ins. Co. of America, 371 Mass. 659, 664 (1976).
In this case, because the jury reasonably found that Shutzer did not breach the stock purchase agreement, it necessarily follows that the plaintiffs were required to perform their obligations under the agreement-namely, they were required to pay Shutzer pursuant to the terms of the agreement. Yet, the jury answered "no" to jury question five, which asked the jury whether the plaintiffs breached the agreement. Arguably, this answer presents an inconsistency.
The trial judge correctly harmonized this seeming inconsistency with reference to an argument that the plaintiffs' counsel made during closing. In particular, counsel argued that the plaintiffs had not breached the agreement because payment was not due until after Red Rock's 2014 net profit was calculated-a calculation that, at the time of the trial, had not been performed.[4] In other words, the plaintiffs' defense to Shutzer's counterclaim was that the condition precedent to their duty to pay Shutzer for his stock had not yet occurred.
Once that calculation was done, however, the jury were able to determine the amount owed to Shutzer under the agreement and enter that amount in response to jury question eight. We discern no error in the trial judge's harmonization of the jury's verdicts.
b. Jury question seven. The plaintiffs next argue that jury question seven should not have been presented to the jury because it suggests a quantum meruit theory of recovery.[5] In response, Shutzer argues that the question relates to the election of remedies in a situation where one party to an agreement has materially breached the agreement and the nonbreaching party elects to enforce the agreement.
We need not resolve these competing readings. In light of the jury's reasonable conclusion that Shutzer had not breached the agreement, much less committed a material breach, jury question seven (whose introductory clause required a contrary finding as a predicate) became irrelevant to the verdict.[6] Accordingly, any error in presenting the question to the jury was not prejudicial.[7] See Blackstone v. Cashman, 448 Mass. 255, 270 (2007) ( "An error in jury instructions is not grounds for setting aside a verdict unless the error was prejudicial-that is, unless the result might have differed absent the error").
c. Exclusion of the plaintiffs' expert witness. The plaintiffs next argue that the trial judge erred by not permitting their expert, Michael Kupka, to testify at trial as to the value of the stock to be sold by the stock purchase agreement. We review a trial judge's decision to exclude expert witness testimony for abuse of discretion. Canavan's Case, 432 Mass. 304, 312 (2000). Here, we discern no such abuse given that Kupka's report provided no explanation for his conclusion that the value of the Red Rock stock was "nil" and failed to quantify the amount by which any of Shutzer's actions diminished the value of Red Rock.
d. Judgment against all three plaintiffs. The plaintiffs further argue that the trial judge erred in entering judgment against all of them equally because the stock purchase agreement contemplates that the liability of Petrucci and Avalanche would be limited by a future guaranty of up to $1.35 million on an anticipated promissory note that Red Rock was to have made for the remaining portion of the stock payment. We disagree.
The plaintiffs were all parties to and signatories of the stock purchase agreement; each benefited from the agreement. Petrucci signed the stock purchase agreement in his individual capacity, on behalf of Red Rock as its president, and on behalf of Avalanche as its manager. There was a complete failure on the part of all of the plaintiffs to perform under the agreement. Accordingly, all three plaintiffs are equally liable for the damages flowing from that breach.[8]
e. Doubling awards on the plaintiffs' common-law claims. The plaintiffs argue that c. 93A requires that the damages awarded on their breach of fiduciary duty claim and civil conspiracy claim be doubled. "[D]amages awarded in a freestanding, unrelated cause of action that happens to be tried with a c. 93A claim will not be subject to multiplication because there must be 'a causal connection between a defendant's wrongful conduct and the resulting damages.' " T. Butera Auburn, LLC v. Williams, 83 Mass. App. Ct. 496, 503 (2013), quoting from Cohen v. Liberty Mut. Ins. Co., 41 Mass. App. Ct. 748, 755 (1996). Here, the jury expressly found that the damages they awarded for the breach of fiduciary duty and civil conspiracy claims were for harms separate from those they awarded under c. 93A.
f. Cross appeal. On cross appeal, Shutzer and Salem argue that the judgment in favor of the plaintiffs in connection with their c. 93A claim should be reversed because (1) none of the defendants' misconduct occurred in "trade or commerce," and (2) the evidence did not support the damages award.
The defendants did not raise their "trade or commerce" argument before the trial court, and it is thus waived.[9] See Costa v. Brait Builders Corp., 463 Mass. 65, 70 (2012) ; Skowronski v. Sachs, 62 Mass. App. Ct. 630, 632 (2004). Moreover, as the trial judge found, the damages award relates reasonably to the harm suffered by the plaintiffs in light of the evidence presented.
Judgment affirmed.

In fact, the jury were asked to do that calculation in jury question thirteen of the verdict form.

The plaintiffs also contend that the trial judge did not give requested jury instructions regarding the fiduciary duty of company officers and directors. The record shows, however, that the trial judge gave both instructions. The plaintiffs further argue that the trial judge should have instructed the jury that, in the context of a redemption agreement, the failure of a fiduciary to make full disclosure is an independent basis to void a stock purchase agreement, citing to a tentative draft treatise and parenthetical in Dynan v. Fritz, 400 Mass. 230, 243 (1987) (quotation omitted), which states that "some opinions have expressed" this view. We discern no error in the trial judge's decision not to base the jury instruction on this parenthetical description of a tentative draft treatise.

Jury question seven provided: "Notwithstanding Lawrence Shutzer's material breach of the November 2014 agreement, do you find by a preponderance of the evidence that the plaintiffs retained the benefits of the agreement and were thus obligated to honor their obligations under the agreement?"

It appears the jury answered question seven only as a result of a mistake in the jury verdict form that none of the parties noticed. In particular, the jury were asked in question five whether the plaintiffs had breached the stock purchase agreement. The jury answered "no." The instructions that followed only direct the jury as to what to do if their answer to question five was "yes"-specifically, the jury were to answer questions six and eight. Having answered "no" and in the absence of any direction, the jury continued to answer question seven even though question seven was inapplicable given that the jury had already found that Shutzer did not breach the agreement in question one.

The plaintiffs similarly rely on a zero-interest provision of a contemplated promissory note to argue that the trial judge erred by awarding interest to Shutzer. Because the promissory note never issued, we disagree.

Indeed, the defendants did not object to the trial judge's jury instruction stating, "With respect to the first element [of a 93A claim], there is no dispute that all of the [p]laintiffs and the [d]efendants named in the claim and counterclaim were all acting as business persons in trade or commerce." Nor did the defendants raise this argument in their JNOV motion.