Gants, J.
The plaintiff, Kristy Sattler (“Sattler”), was employed by the Natick Animal Clinic, Inc. (“the Clinic”) until her termination on October 27, 1998. Sattler has filed suit, contending that her termination was motivated by the Clinic’s intent to discriminate against her on the basis of her gender and her handicap. The Clinic now moves for summaiy judgment on all counts in the complaint. After hearing and for the reasons stated below, the defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
In evaluating a motion for summaiy judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently the facts stated below are presented in the light most favorable to Sattler and should not be misunderstood as findings of the Court.
On or about March 3, 1998, the Clinic hired Sattler to work as an assistant in the Clinic’s boarding kennel. Sattler was an at-will employee; she had no employment contract. As a kennel assistant, Sattler’s job required her to clean up after the animals, feed and bathe them and otherwise look after their welfare, and keep the facility clean. Sattler was having difficulty getting along with another kennel worker and asked to be transferred to the job of receptionist. The Clinic granted her request and she began work as a receptionist in or about mid-April 1998.
As a receptionist, Sattler’s duties included greeting clients, checking animals in and out, carrying dog food, taking the boarding animals to the kennel, and assisting the veterinarians in the examination rooms. On June 1, 1998, Sattler acknowledged being late for work three times in the same week and received a written reprimand for her tardiness. Under the Clinic’s Employment Benefits & Policy Manual (“the Manual”), “Failure to report for work without prior authorization may be grounds for immediate dismissal.”
On September 24, 1998, Sattler received a second written reprimand for tardiness. She signed the reprimand, acknowledging that she had called in at 11 a.m. to tell the Clinic that she would be late for her 12 noon shift, and did not arrive until 2 p.m. Sattler testified that she had gotten into her car that morning to go to work and her brakes failed. She had to call her sister in California to obtain permission to borrow her sister’s car in order to get to work.
On October 2, 1998, Sattler received her third written reprimand. According to the written reprimand, Sattler had taken in a dog as a boarder at the Clinic at 6:10 p.m., and left work without ensuring that the dog had been properly checked in and the necessary information input into the computer. Sattler admits that this happened but denies that it was her fault. She explained that she was in the office with two other receptionists at the end of the day when a customer arrived with a dog to be boarded. Sattler said that she had already shut down the computers, and had to re-boot them while the two other receptionists began to prepare the necessary paperwork. When the computers had finally been re-booted and were ready for operation, the dog was already in the back. One of the other receptionists said that they should not worry about inputting the necessary information, and that she would do it the next day. The second receptionist offered to stay late to input the information, but the first receptionist had the only key to the office and was in a hurry to get home. As a result, Sattler again turned off the computers without inputting any information, including the required information about vaccination history. In short, Sattler admits that she left the office that day without having ensured that the necessary information about this dog, including its vaccination history, had been entered into the Clinic computer, but claims that this was the fault of one of the other receptionists.
Under the Manual, ‘Three written warnings may result in termination.” The Clinic, however, did not fire Sattler after the third written reprimand, but it did remove her from her position as a receptionist and transferred her to work in the kennel for the kennel manager. Although Sattler had informed the Clinic in August 1998 that she was pregnant, Sattler does not contend that this transfer was motivated by her pregnancy.
In her new job working for the kennel manager, Sattler was on her feet eight hours per day. In view of her pregnancy, she was not required to climb on ladders, take food down from the cages, clean up after the cats, transport large dogs, or clean up fecal matter, but she had to perform all the other physical kennel duties. Although she had been told prior to the transfer that she would be doing more secretarial work than kennel work in this new position, she actually performed little secretarial work other than tally up the day’s sales for fifteen minutes each day and prepare reminder cards one day every other week.
As a result of her pregnancy, Sattler developed a sciatic nerve problem that resulted in her being physically unable to stand on her feet for eight hours a day and performing her assigned duties in the kennel. On or about October 26, 1998, she presented the Clinic with a letter from her obstetrician, who wrote that he had advised her, because of her sciatic nerve problems, to avoid prolonged periods on her feet and to limit her bending. Sattler asked the Clinic to transfer her back to her job as a receptionist, but the Clinic refused. Sattler also asked for a full-time or part-time secretarial position. She was not offered either position; nor was she offered a leave of absence.[1] Sattler acknowledged that nobody at the Clinic had a secretarial position, and that the only secretarial duties she knew were being performed were being handled by receptionists or by her as a kennel worker. On October 28, 1998, the Clinic provided Sattler with a letter that *47 declared she had been terminated from her employment on October 27, 1998. The letter concluded:
When Kristy became pregnant, she apparently developed problems staying on her feet, and bending over. Since the nature of our work can be very fast-paced and often strenuous, we terminated her employment. She is, however, welcome to reapply after her child is bom.
DISCUSSION
To prevail on summaiy judgment, the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law. See generally Mass.R.Civ.P. 56(c); Highlands Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). Where, as here, the party opposing summary judgment has the burden of proof at trial, the moving party is entitled to summary judgment if it “demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). ‘To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Id. It is sufficient to demonstrate that “proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Satüer contends that the Clinic’s termination was motivated by her pregnancy and her pregnancy-related handicap — the sciatica. In evaluating her claims, it is important to recognize that Satüer concedes that she was physically unable because of her sciatica to perform her necessary duties in her last position as a kennel worker. Therefore, Satüer, is not arguing that her termination from this position was discriminatory, since she acknowledges that the Clinic had no choice but to remove her from this job. Rather, Sattler rests her claims of discrimination on the Clinic’s alleged refusal to re-assign her to a secretarial job.
It is also important to recognize that her claim of gender discrimination and handicap discrimination are intertwined, in that she contends that the sciatica that developed during her pregnancy was the handicap that required reasonable accommodation. Therefore, with both discrimination claims, Sattler can prevail only if the Clinic had a duty to make reasonable accommodation for her sciatica, and that duly required the Clinic either to return her to her previous position as a receptionist or create a new secretarial position for her.
Under G.L.c. 151B, §4(16), it is unlawful:
For any employer . . . to . . . discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer’s business.
G.L.c. 151B, §4(16) (emphasis added). A “qualified handicapped person” is:
a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.
G.L.c. 151B, §1(16) (emphasis added). In a case alleging unlawful discrimination on the basis of handicap, the burden rests with the plaintiff to establish as part of her prima facie case that she is a “qualified handicapped person.” See Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997); Beal 419 Mass. at 541. One cannot determine whether a person is a “qualified handicapped person” except in the context of a particular job. For instance, Itzhak Perlman is certainly a “qualified handicapped person” as a violinist, but not as a shortstop. There is indeed no dispute that the plaintiff, even with reasonable accommodation, could not have performed the essential functions of the job she previously held as a kennel worker because of the physical demands of that job. Therefore, with respect to that particular job, she is not a “qualified handicapped person” and, as a result, the plaintiff cannot make out a prima facie case of handicap discrimination based on her removal from that particular job. Hayward v. Massachusetts Water Resources Administration, Suffolk Civ. No. 98-0953-F (May 15, 2001) (13 Mass. L. Rptr. 239) at 4-5.
The plaintiff argues, however, that the Clinic has a legal duty of reasonable accommodation under G.L.c. 15 IB and has failed to fulfill that duty. She contends that the Clinic’s duty of reasonable accommodation required it either to return her to the position of a receptionist or to create a new secretarial position for her, whether full- or part-time. The plaintiff attempts to equate the employer’s duty not to discriminate on the basis of handicap with an employer’s duty to provide reasonable accommodation. The employer’s duty of reasonable accommodation exists only with respect to a particular job — this duty obligates the employer to make reasonable adjustments or adaptations to permit a handicapped person to perform the essential functions of a particular job. See G.L.c. 151B, §4(16); Cox v. New England Telephone & Telegraph Co., 414 Mass. 375, 383 (1993). With respect to a particular job, an employer’s duty not to discriminate on the basis of handicap may indeed be identical to its duly to make reasonable accommodation for that handicap. However, when, as here, an employee, because of a handicap, is no longer able, even with reasonable accommodation, to perform the essential duties of her particular job, the employer’s duty of reasonable accommodation no longer applies and the only applicable duty to that employee is the duty not *48 to discriminate on the basis of handicap. Hayward v. Massachusetts Water Resources Administration, supra, at 7-8.
What is the scope of an employer’s duty not to discriminate on the basis of handicap in the context of an employee who, even with reasonable accommodation, can no longer perform her job because of her handicap? The employer’s duty in this context is to treat a handicapped employee in the same fashion as it treats a non-handicapped employee who, through no fault of her own, no longer can continue in her previous job, either because the job has been eliminated or has been upgraded beyond the qualifications of the employee. For instance:
If an employer’s policy or practice in such circumstances is to dismiss the non-handicapped employee and simply permit the employee to apply for any vacant position like anyone else, without giving her any preference over any other applicant, then the employer may dismiss the handicapped employee and treat her the same. If the handicapped employee were to apply for other positions within the company, then the employer would simply have a duty not to discriminate against the handicapped person in her application for employment. As part of that duty not to discriminate, the employer could not reject the handicapped employee for a position because it would need to make reasonable accommodation to permit the handicapped employee to perform that position. See generally 42 U.S.C. §12112(b)(5)(B) (unlawful to deny employment opportunity to an otherwise qualified job applicant with a handicap “based on the need of [the employer] to make reasonable accommodation to such individual’s physical or mental impairments”).
If an employer’s policy or practice in such circumstances is to place the non-handicapped employee in the first vacant position that comes open for which that employee is qualified, and give that employee absolute preference over all other applicants for that position, then the employer must do the same with the handicapped employee.
If an employer’s policy or practice in such circumstances is to permit the non-handicapped employee to apply for any vacant position and give him preference over any non-employee for that position (so that, if her qualifications and abilities were seen as identical to a non-employee, she would be given the job), then the employer must do the same with the handicapped employee.
Applying this standard, this Court finds that Sattler has no reasonable expectation of proving that the Clinic refused to return Sattler to the position of a receptionist because of either her pregnancy or her handicap. There is no dispute that Sattler, in less than six months as a receptionist, received three written reprimands, that the Clinic’s Manual permitted it to fire Sattler after the third written reprimand, and that the Clinic opted not to fire her but to transfer her immediately after the third reprimand. In view of this history, Sattler has no reasonable expectation of proving that the Clinic’s refusal to return her to this position less than four weeks after her last reprimand was motivated by discriminatory animus towards either her pregnancy or her handicap. See generally Lipchitz v. Raytheon Company, 434 Mass. 493, 504 (2001); Kourouvacilis v. General Motors Corp., 410 Mass. at 716 (1991).
Nor, even if the Clinic refused to create a new secretarial position for her, is there any reasonable expectation that Sattler will prove that its refusal was motivated by discriminatory animus towards either her pregnancy or her handicap. Sattler concedes that the Clinic had no positions in which only secretarial functions were performed, and that all secretarial functions were then being performed by persons who were performing substantial other duties, as either a receptionist or a kennel worker. Therefore, creating a new secretarial position would mean reconfiguring the job duties of other Clinic employees. Nor has Sattler offered other evidence that the Clinic has ever created a new position for anyone who could no longer perform the duties of his or her job at the Clinic, and that the Clinic therefore treated Sattler more harshly than other employees. It may indeed have been wonderful if the Clinic had created a new position for Sattler so that she could continue working at the Clinic despite her sciatica, but it was not discrimination in violation of G.L.c. 15 IB to fail to do so.[2] Therefore, the motion for summary judgment is allowed as to the claims of gender and handicap discrimination in violation of G.L.c. 151B.
Having resolved these primary claims, this Court need not dwell long on the remaining two counts, alleging violation of the Massachusetts Equal Rights Act (G.L.c. 93, §§102 and 103) and the common law tort of intentional infliction of emotional distress.' The case law is clear that G.L.c. 15 IB is the exclusive remedy for victims of discrimination in the workplace, and that additional remedies are not available through claims under the Equal Rights Act or the common law. Guzman v. Lowinger, 422 Mass. 570, 571 (1996); Green v. Wyman-Gordon Co., 422 Mass. 551 (1996). The common law tort of intentional infliction of emotional distress is also barred by the exclusivity provisions ofthe workers’ compensation act, G.L.c. 152, §24. Green v. Wyman-Gordon Co., 422 Mass. at 558-61; Doe v. Purity Supreme, Inc., 422 Mass. 563, 565-66 (1996).
ORDER
For the reasons stated above, the defendant’s motion for summary judgment is ALLOWED.

 The Clinic contends that Sattler was offered a part-time “sit-down” position and a leave of absence, and chose to take a leave of absence.

 It should again be noted that the Clinic insists that it did offer Sattler a part-time secretarial job which it created for her, and that she turned this job down.