## DIANE M. YOUNKER *vs.* DEPARTMENT OF TRANSITIONAL ASSISTANCE.

No. 13-P-855.

Suffolk. January 15, 2014. - June 16, 2014.

Present: CYPHER, RUBIN, & HINES, JJ.

*Anti-Discrimination Law,* Age, Prima facie case. *Employment,* Discrimination, Demotion, Constructive discharge. *Department of Transitional Assistance. Constitutional Law,* Freedom of association. *Practice, Civil,* Summary judgment, Prima facie case.

In a civil action alleging age discrimination in employment, the judge erred in granting summary judgment in favor of the defendant employer, where, although the employer articulated a legitimate, nondiscriminatory reason for its action that rebutted the plaintiff's prima facie showing of discrimination, the record revealed a genuine issue of material fact whether the employer's proffered legitimate business reason was in fact the reason for the plaintiff's demotion and constructive termination. [458-462]

In a civil action alleging that the plaintiff's demotion at work violated her rights to property and freedom of association under arts. 6, 7, and 10 of the Massachusetts Declaration of Rights, the judge properly granted summary judgment in favor of the defendant employer, where the plaintiff pointed to no record evidence that supported her allegations. [462]

CIVIL ACTION commenced in the Superior Court Department on December 31, 2010.

The case was heard by *Bonnie H. MacLeod,* J., on a motion for summary judgment.

*Paul L. Nevins* for the plaintiff.

*Kenneth Y. Lee,* Assistant Attorney General, for the defendant.

RUBIN, J. The plaintiff, Diane M. Younker, appeals from a summary judgment on her claims for violation of her constitutional right of association and for age discrimination under G. L. c. 151B, §§ 4(1C) & 9. We reverse in part.

1. *Age discrimination.* The plaintiff was employed by the

Department of Transitional Assistance (DTA) for forty-two years. She was repeatedly promoted during her long tenure at the agency, rising from her initial post as a social worker to become the director of the Davis Square office in Somerville. In 2007, when the Davis Square and Revere offices were merged, she was thought sufficiently qualified to be appointed director of the newly combined office in Revere. The former director of the Revere office became her assistant director.

In the spring of 2009, shortly after the appointment of Julia Kehoe as commissioner of the DTA, the plaintiff was informed in a telephone call from John Augeri, DTA assistant commissioner of field operations, that she was being demoted. The director of the Framingham office, Paul Sutliff, was made director of the Revere office, while the plaintiff would be made assistant director. Concluding that her demotion amounted to constructive termination, the plaintiff resigned the following month.[1]

At the time of the demotion, the plaintiff was seventy years old. Sutliff was fifty-three. The plaintiff stated in her affidavit, and the defendant does not dispute, that at the time of her demotion she was not told any reason for her removal from the directorship of the Revere office. She insisted upon being given notice of the demotion in writing and was sent a letter on April 7, 2009, which provided written confirmation of the reassignment but again failed to state any justification for the demotion.

In its motion for summary judgment, the DTA argued that the plaintiff was demoted based on the belief that Sutliff would be better able to resolve issues with traffic flow in the Revere office. The office received a high volume of clients and, as a result, experienced issues with congestion in the waiting area. The plaintiff stated in her affidavit that in January of 2009 she was notified that work groups were being formed to address the challenges of large offices such as the Revere office. Members of the work groups visited the Revere office and met with the plaintiff and other Revere employees, but the plaintiff never received any specific suggestions as to how to resolve the problem.

In analyzing a claim of age discrimination, we apply the

---

[1]The defendant does not contest here that the plaintiff was constructively terminated.

familiar burden-shifting analysis of *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 138-139 (1976) ("[A] complainant may prove a prima facie case of unlawful discrimination and shift the burden to the respondent to produce a lawful explanation for the treatment accorded the complainant. . . . [I]f the reason given by the employer is the real reason for its action and it is a nondiscriminatory one, . . . the employer has . . . rebutt[ed] the prima facie case." The complainant may then meet the burden of persuasion "by proving by a preponderance of the evidence that the respondent's facially proper reasons given for its action . . . were not the real reasons for that action").

In the case before us, the plaintiff made out a prima facie case of age discrimination. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 441 (1995) ("[A] plaintiff carries the burden of a prima facie case of discrimination with evidence that: [1] he is a member of a class protected by G. L. c. 151B; [2] he performed his job at an acceptable level; [3] he was terminated; and [4] his employer sought to fill the plaintiff's position by hiring another individual with qualifications similar to the plaintiff's"). The burden then shifted to the defendant to articulate a lawful reason for the demotion. See *Wheelock College*, 371 Mass. at 138-139. The defendant produced no internal documentation concerning the determination to demote the plaintiff. Instead, it presented an affidavit from Kehoe which stated that she "came to believe that a management restructuring would better be able to implement these recommendations [for improving the reception area of the Revere office] than Diane Younker." However, the affidavit did not provide any explanation for the basis of the Commissioner's conclusion.

In addition, the defendant put forward deposition testimony by Augeri, who described the traffic flow issues in the Revere office and what he perceived as a lack of improvement under the plaintiff's direction. Augeri testified that the Revere office's "waiting room was very crowded and the visitors to the office seemed confused about where they should report. People were waiting a long time . . . . And the concern was that connections weren't being made . . . with the staff that they were

there to see." Members of a work group organized by DTA's central office visited Revere on multiple occasions and made specific recommendations, including having "staff stationed by the elevator to direct visitors to the office" and "assigning staff to . . . the waiting room . . . to manage the visitors." The plaintiff expressed "reluctance or resistance" to these suggestions based on concern over assigning staff who would otherwise work on cases to traffic management functions. By contrast, Augeri thought that "there were ways of assigning staff that could have relieved the overall burden to the office."

Augeri testified that he had telephone conversations with the plaintiff in which he perceived that "she was having difficulty because of her feeling that . . . she didn't have sufficient staff to assign them to these sort of special functions that the group had recommended would help with the overall efficiency of the office." Ultimately, members of the work group were recalled to the central office, and Augeri testified that at that time "what the group had put in place in terms of some of the recommendations and practices were abandoned." At that point, "it appeared as though we were basically back in the same position we had been prior to the group starting to visit Revere." Augeri testified that DTA management attributed the abandonment to the plaintiff's decisions or actions, and made the decision to seek another manager "who might have experience and have attempted to look at business processes a little different [sic]."

Citing this evidence, the defendant argues that it demoted the plaintiff because it decided that a management restructuring was the best way to address the congestion problem in the waiting room. We agree with the motion judge that the defendant has articulated a legitimate, nondiscriminatory reason for its action.

This serves to rebut the plaintiff's prima facie showing of discrimination. At trial the burden of proof would remain on the plaintiff to demonstrate unlawful discrimination. See *Wheelock College*, 371 Mass. at 139. The question for us in reviewing the allowance of a motion for summary judgment, which we do de novo, see *Nova Assignments, Inc.* v. *Kunian*, 77 Mass. App. Ct. 34, 35 (2010), is whether there is any genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. We must take the evidence and all

reasonable inferences therefrom in the light most favorable to the nonmoving party — here, the plaintiff. See *ibid.*

The Supreme Judicial Court in *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 501 (2001), noted that there will rarely be direct evidence of discriminatory animus. As a matter of substantive antidiscrimination law under G. L. c. 151B, the court there held that, in cases of circumstantial evidence (like this one), where the evidence may be viewed as supporting a conclusion that the defendant's proffered reason is false, the case must go to the jury. See *ibid.* The jury may determine both whether the proffered reason is true or false and, if they determine that it is false, they "may (but need not) infer that the employer is covering up a discriminatory intent, motive or state of mind." *Ibid.*

In this case, the record reveals a genuine issue of material fact whether the defendant's proffered legitimate business reason was in fact the reason for the plaintiff's demotion. Commissioner Kehoe put forward no explanation as to why the plaintiff was thought inadequate to perform the task before her, or why Sutliff was considered a better choice. Assistant commissioner Augeri's deposition testimony did. However, many of the facts he asserted were relevant to this conclusion are contravened by the plaintiff's own affidavit, in which she stated, "Ms. [Georgianna] Melendez [the head of the work group] advised staff that she would be instituting changes which were never specified. . . . I had many meetings with Georgianna Melendez; never once did she object to anything I or my staff had discussed or done. . . . As the Director of the Revere office, I was never given a specific set of implementations that I was to institute." The plaintiff also asserted that "no one in the Central Office ever complained to me regarding my work performance or the management of the Revere office" and that "[n]ot one of the three [managers involved in overseeing the plaintiff and implementing the waiting area improvements] ever instructed me to institute any type of change no[r] to do anything different with the amount of staff that I had."

This evidence raises a genuine issue with respect to a number of the subsidiary facts asserted by Augeri in support of his contention that the plaintiff was demoted for resisting the work group's recommendations and for undoing changes that the

group had put in place. In addition, viewing the evidence in the light most favorable to the nonmoving party, the plaintiff, it is reasonable to infer that if a failure to address the waiting room congestion was the true reason for the plaintiff's demotion, she would have been told about the problem at or before the time of her demotion. She was, after all, a forty-two year employee of the agency and one held in high enough regard that, just two years before this, she had been chosen to head the newly combined Revere office. The plaintiff's evidence, taken together, raises a genuine issue whether the reason proffered by the DTA for her demotion was the true reason.

This is not to say that the plaintiff has proven discriminatory animus. We hold only that there is sufficient evidence of pretext to send the issue to a jury. The jury may determine what actually occurred prior to the demotion with respect to the waiting area, whether the DTA's proffered reason for the promotion is a pretext and, if so, whether the true reason for the plaintiff's demotion was discriminatory animus.

2. *Violation of associational rights.* The plaintiff's other claim in her complaint is based on an allegation that she was demoted due to her lack of political connections while other, more politically connected individuals were promoted. She asserts that this burdens her rights to property and freedom of association under arts. 6, 7, and 10 of the Massachusetts Declaration of Rights. Even assuming that these rights are implicated by the plaintiff's allegation, she points to no record evidence that tends to support it. For example, there is no evidence that the promoted individuals in fact held the supposed political connections. The plaintiff relies on her affidavit, but it merely repeats her assertions, without providing a basis in personal knowledge or setting forth facts as would be admissible in evidence. See Mass. R.A.P. 56(e), 365 Mass. 824 (1974). On this claim, therefore, the summary judgment will be affirmed.

3. *Conclusion.* So much of the judgment as dismisses the plaintiff's age discrimination claims is reversed. The remainder of the judgment is affirmed.

*So ordered.*