Carl CHIARETTO, Plaintiff,

v.

STARWOOD HOTELS & RESORTS WORLDWIDE, INC., Defendant.

C.A. No. 07–12294–MLW.

United States District Court, D. Massachusetts.

March 30, 2010.

Paul A. Manoff, Law Office of Paul A. Manoff, Boston, MA, for Plaintiff.

Jonathan Shapiro, David A. Strock, Fisher & Phillips LLP, Portland, ME, for Defendant.

*MEMORANDUM AND ORDER*

WOLF, District Judge.

In this case, plaintiff Carl Chiaretto alleges a state law age discrimination claim

against defendant Starwood Hotels & Resorts, Worldwide, Inc. ("Starwood").[1] The claim, brought under Mass. Gen. L. c. 151B, arises out of Starwood's termination of Chiaretto from a bartending position, which followed a workplace incident on November 10, 2005. On July 14, 2009, Magistrate Judge Leo Sorokin issued the attached 14–page Report and Recommendation (the "Report"). For reasons that he discusses in detail, the Magistrate Judge recommends allowing Starwood's motion for summary judgment, brought pursuant to Federal Rule of Civil Procedure 56.

In summary, the Magistrate Judge concluded that summary judgment is appropriate because there is no evidence that the decisionmakers concerning Chiaretto's termination, General Manager Michael Jorgensen and Director of Human Resources Kenia Franco, were motivated by any age bias when they terminated Chiaretto. Report at 12. While Chiaretto argued that Donna Filippetti, formerly his direct supervisor, harbored age-based animus towards him and influenced the termination process, the Magistrate Judge concluded that no evidence connected Filippetti's alleged bias to Chiaretto's termination. Rather, the Report states that the factual record shows that the decisionmakers' conclusions-that Chiaretto had been insubordinate and behaved improperly toward a co-worker-were based on information obtained independent of Filippetti. *See* Report at 11–12. Accordingly, the Magistrate Judge found no grounds upon which Chiaretto could prevail under the burden-shifting framework applicable to age discrimination claims. *See* Report at 11–12; *Knight v. Avon Products, Inc.*, 438 Mass. 413, 420–27, 780 N.E.2d 1255 (2003) (adopting framework from *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Chiaretto filed objections to the Report. The court has considered *de novo* the matters as to which objections were made. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72. The Magistrate Judge applied the correct legal standards. His Report is thorough, thoughtful, and persuasive. It is, therefore, being adopted.

■ More specifically, the court agrees that Starwood's motion for summary judgment is meritorious. *See* Report at 14. The court finds that Chiaretto's objections are based on "unsupported speculation," and that he has not presented "enough competent evidence to enable a finding favorable" to him. *Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir.2006) (explaining that summary judgement is appropriate in discrimination cases when the plaintiff fails to establish a trial-worthy issue) (internal quotation marks and citation omitted).

Chiaretto objects to the Magistrate Judge's finding that there would have been an investigation into the November 10, 2005 incident even if Filippetti had not contacted Franco. Objection at 1. Chiaretto argues that no investigation would have occurred absent Filippetti's influence because she was the one who reported Chiaretto's misconduct to Franco. However, the record shows that Kilian and Loic Vince, the Director of Food and Beverage, also brought the issue to Franco's attention. While Chiaretto speculates that Vince "ostensibly" heard about the incident from Filippetti, nothing in the record supports this inference. Objection at 1. Accordingly, this objection is without merit.

---

1. This court has jurisdiction over the claim based upon diversity, pursuant to 28 U.S.C. § 1332, because Chiaretto is a citizen of Massachusetts, and Starwood is a Maryland corporation with a principal place of business in New York. *See* Notice of Removal at 1–2.

■ In addition, Chiaretto challenges the severity of the discipline imposed on him for his misconduct on November 10, 2005. He states that his inappropriate conduct towards his co-worker was "relatively trivial" and that his failure to comply with his supervisor's order "for a few seconds" is insufficient to justify Franco's conclusion that he was insubordinate. Objection at 1–2. However, even if the court were to agree that Starwood's decision to terminate Chiaretto was disproportionate to the seriousness of his misconduct, the court's "task is not to evaluate the soundness of [the defendant's] decision making, but to ensure it does not mask discriminatory animus." *Sullivan v. Liberty Mutual Ins. Co.*, 444 Mass. 34, 56, 825 N.E.2d 522 (Mass.2005) (citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) ("Courts may not sit as super personnel departments, assessing the merits-or even the rationality-of employers nondiscriminatory business decisions.")). Therefore, this objection too is without merit.

■ Chiaretto also argues that his lengthy disciplinary record, which was a factor in the decision to terminate him, was the product of Filippetti's alleged bias against him. He argues that in the absence of this biased record he would not have been terminated based on the events of November 10, 2005. While the Magistrate Judge stated that, drawing all inferences in favor of Chiaretto, a reasonable fact-finder could conclude that Filippetti had been involved in all but one of the reports in Chiaretto's disciplinary record,

there is no evidence demonstrating that those reports were motivated by any age-based animus. Report at 8, 12. In fact, as the Magistrate Judge found, the only evidence presented of Filippetti's alleged age-bias are three stray remarks she made, which are unconnected to the events on Chiaretto's disciplinary record or his 2005 termination. *Id.* at 12–13. Ultimately, as the Magistrate Judge recognized, "isolated or ambiguous remarks [ ] tending to suggest animus based on age are insufficient, standing alone, to prove an employer's discriminatory intent." *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 314 n. 7, 613 N.E.2d 881 (1993); *Tardanico v. Aetna Life & Cas. Co.*, 41 Mass.App.Ct. 443, 450, 671 N.E.2d 510 (1996) (quoting *Fontaine*, 415 Mass. at 314 n. 7, 613 N.E.2d 881).

Chiaretto, however, contends that there is more evidence of Filippetti's bias than those remarks. On this point, he objects to the Magistrate Judge's finding that, in 1998, Frank Caliguire, then the hotel's General Manager, told Gwen Butler, then the bar's manager, that he wanted Chiaretto out of the bar because Caliguire sought to attract a younger crowd. Chiaretto asserts that this comment was actually made in 2000 or 2001, making it closer in time to his termination and, therefore, meaningful evidence of Filippetti's discriminatory animus. To that end, Chiaretto speculates that Caliguire made similar comments to Filippetti, leading her to discriminate against Chiaretto.[2] However, Chiaretto's attempts to connect Caliguire's statements to Filippetti's state of mind are conjecture that is not based on any evi-

---

**2.** At three points Chiaretto tries to bridge the evidentiary gap between Caliguire's statements and Filippetti with unsupported conjecture:

(1) *"Ostensibly* Caliguire made similar comments to Filippetti, as she began harassing plaintiff with no reasonable basis." Objection at 2 (emphasis added).

"Caliguire's statement to Butler, *presumably* repeated to Filippetti ..." *Id.* at 3 (emphasis added).

"*Presumably*, Filippetti was acting towards plaintiff to carry out the policy of Caliguire, *ostensibly* told to her in 2001 ..." *Id.* (emphasis added).

dence. Therefore, they are insufficient to prove Filippetti's bias or to connect Caliguire's bias to Chiaretto's termination. *See Forestier,* 440 F.3d at 21. Accordingly, whatever the date of Calguire's comment, there is no evidence that it is related to Starwood's November, 2005 decision to terminate Chiaretto.

Finally, Chiaretto argues that Franco's conclusion that Chiaretto engaged in inappropriate conduct towards a co-worker was biased by Filippetti because she brought the matter to Franco's attention. However, the Magistrate Judge's recommendation would remain persuasive even if the record supported Chiaretto's speculation that Caliguire's comments influenced Filippetti to harbor age-based bias, and that Filippetti alone was responsible for instigating the November, 2005 investigation, because Franco's investigation and the independent conclusion that she and Jorgensen reached severed any causal connection between Filippetti's alleged bias and Chiaretto's termination. *See Thompson v. Coca–Cola Co.,* 522 F.3d 168, 178 (1st Cir. 2008) (citing *Mole v. Univ. of Mass.,* 442 Mass. 582, 598, 814 N.E.2d 329 (2004)).

■ More specifically, Chiaretto does not dispute that Franco conducted a multi-day investigation of the November 10, 2005 incident, including two interviews with him, interviews with the other staff-members working that evening, and consideration of letters written by Chiaretto about the incident. It is also not disputed that Franco and Jorgensen's ultimate decision to terminate Chiaretto was based on this thorough investigation and their independent conclusion that, among other things, Chiaretto had been insubordinate and engaged in inappropriate conduct towards a coworker. This investigation and the decisionmakers' independent conclusion defeats Chiaretto's claim that Filippetti's alleged bias contributed to his termination. *See Thompson,* 522 F.3d at 178; *Mole,* 442

Mass. at 598, 814 N.E.2d 329. As a matter of law, "[w]here a neutral decisionmaker takes independent action against an employee, that person's 'independent decision to take adverse action breaks the causal connection between [a] supervisor's retaliatory or discriminatory animus and the adverse action.'" *Zades v. Lowe's Home Centers, Inc.,* 446 F.Supp.2d 29, 39 (D.Mass.2006) (quoting *Mole,* 442 Mass. at 598, 814 N.E.2d 329).

The record in this case contains no indication that Franco or Jorgensen harbored discriminatory animus against Chiaretto or that their decision to terminate him depended on Filippetti's evaluation of the November 10, 2005 incident. Accordingly, even viewing the record in the light most favorable to Chiaretto, there is no basis to find that the decision to terminate him was caused by age-based bias.

In view of the foregoing, the court hereby adopts and incorporates in this Memorandum and Order the attached Magistrate Judge Report and Recommendation. For the reasons discussed in this Memorandum and more fully in the Report, Starwood's Motion for Summary Judgment (Docket No. 10) is hereby ALLOWED.

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### July 14, 2009

SOROKIN, United States Magistrate Judge.

The pending motion for summary judgment presents one question: whether the factual record, considered under the governing legal standard, warrants entry of judgment in favor of Defendant Starwood on Plaintiff Carl Chiaretto's single claim of claim of age discrimination under state law arising out of his termination as a bartend-

er.[1] Resolution of this question is necessarily a fact-intensive endeavor. The factual record set forth herein consists of undisputed portions of Starwood's Local Rule 56.1 Statement of Material Facts, supplemented with facts drawn from Chiaretto's own such statement. In keeping with the standard applicable to a motion brought pursuant to Fed.R.Civ.P. 56, the Court construes the factual record in the light most favorable to Chiaretto, the non-moving party.

## INTRODUCTION AND FACTUAL BACKGROUND

Starwood employed Chiaretto as a bartender between September, 1992, and November 18, 2005. Docket # 11, at ¶ 1. At all relevant times, he worked at Bar 10, located in the Westin Copley Place hotel, in Boston. *Id.*, at ¶¶ 1–2. Following an incident on November 10, 2005, Starwood terminated Chiaretto's employment. *Id.*, at ¶¶ 47–51. Starwood explains its decision as arising from the combination of two reasons: (1) Chiaretto's misconduct on November 10, 2005; and, (2) Chiaretto's disciplinary history, including the Day of Decision in effect at the time of the misconduct (a last and final warning that applied against Chiaretto for two years beginning in November of 2004). *Id.*, at ¶¶ 50–51. Chiaretto maintains that discrimination actually motivated the termination decision, arising from the age-based animus of Doreen Filippetti, the Manager of Bar 10 between 2000 and 2002, who was thereafter promoted to Director of Outlets at the hotel (but continued to supervise the operations of Bar 10). *See Id.*, at ¶ 3; Docket # 15, at ¶ 3.

The undisputed facts underlying the investigation and each of the two factors advanced in support of the termination are discussed in turn.

### The Investigation Into the Events of November 10, 2005, And Its Conclusions

Following the events of November 10, 2005, Chiaretto's on-site supervisor (Nicole Kilian) and Fillipetti reported the incident to Kenia Franco (the Hotel's Director of Human Resources), who commenced an investigation. Docket # 11, at ¶ 46. Franco had also been informed by Loic Vince (Director of Food and Beverage) of the incident which occurred on November 10, 2005, and which required her attention. Docket # 15, at II.4; Docket # 12–10, at 5. Franco interviewed all seven of the witnesses to the events (including Fillipetti), reviewed documents submitted by Chiaretto and by the co-worker toward whom he was accused of being abusive, and reviewed Chiaretto's personnel file and disciplinary history. Docket # 11, at ¶¶ 49–50. Chiaretto provided a written narrative to Franco. *Id.*, at ¶ 49; Docket # 12–7, at 3–6. Franco drew three conclusions: that Chiaretto engaged in inappropriate conduct by mocking and taunting a co-worker, that he acted insubordinately by refusing instructions of his supervisor, Kilian, and that he violated hotel policy by involving guests in internal personnel issues. Docket # 11, at ¶ 50. In consultation with Michael Jorgensen, General Manager of the hotel, Franco decided to terminate Chiaretto. *Id.*, at ¶ 51.

Chiaretto makes no claim that Franco and Jorgensen were themselves motivated by age bias (and there is no evidentiary support for such a claim). Rather, he claims that Filippetti's age bias tainted Franco's investigation (as well as her and Jorgensen's joint decision making) both because Filippetti's complaint initiated an investigation into a trivial incident and because Filippetti was a witness upon whom

---

1. Chiaretto also alleged in his Complaint that his termination was motivated by retaliation for complaints he had made about a supervisor, but he has indicated in opposition to the pending motion that he is no longer pursuing that claim. *See* Docket # 14, at 5, n. 7

Franco relied for the events of November 10, 2005.

The undisputed evidence establishes that Filippetti's supervisor, Loic Vince (the hotel's Director of Food and Beverage), also made Franco aware of the November 10th incident and stated that it required her attention. *See* Docket # 12–10, at 5; Docket # 15, at 5. Second, close examination of the factual record reveals that only one of Franco's three conclusions concerning Chiaretto's conduct on November 10th relied upon information from Filippetti.

*Evidence Concerning Chiaretto's Conduct Toward Gwen Hiltunen*

Franco's first conclusion was that Chiaretto behaved inappropriately toward his colleague Gwen Hiltunen, a server. Docket # 11, at ¶ 50. The undisputed facts are that Chiaretto was working on November 10, 2005, as the "service position" bartender (which fills drink orders by servers on behalf of patrons seated at tables) while another bartender, Chuck Masotta, manned the "customer position" (serving patrons seated at the bar). *Id.*, at ¶ 16. Hiltunen took an order from a customer for a bottle of beer and entered the order into Bar 10's computer system. *Id.*, at ¶ 17. Masotta was near the service station when Hiltunen entered the drink order, so Hiltunen asked Masotta for the bottle of beer, which he provided. *Id.* Hiltunen took the beer and served the guest. *Id.*, Chiaretto, unaware that Masotta had already given the beer to Hiltunen, placed another bottle of beer on the service counter. *Id.*, at ¶ 19. Hiltunen reflexively opened the second beer, not realizing that it was for the order she had already served. *Id.* Once she realized the mistake, Hiltunen told Chiaretto that she did not need the beer and asked Chiaretto to put the beer "on ice." *Id.* Chiaretto reminded Hiltunen that she needed to put used glasses at the far side of the service station. *Id.*, at ¶ 20. As Hiltunen walked away, Chiaretto "made a face" at her. *Id.* When Hiltunen returned to the service counter, she asked Chiaretto to switch positions with Masotta, so that she and Chiaretto would not have direct interaction for the remainder of the evening. *Id.*, at ¶ 21. Chiaretto responded by asking why Hiltunen felt that way and stating that perhaps he should take a poll of the other servers and Masotta to determine whether they wanted him to switch to the customer position because "Gwen was unhappy." *Id.*, at ¶ 22. Chiaretto also told Hiltunen that he thought the decision to switch positions had to be made by a manager. *Id.* Hiltunen reported the situation to the on-site manager, Kilian, who went to the service bar to speak with Chiaretto and attempted to convince Hiltunen and Chiaretto to work together as a team. *Id.*, at ¶¶ 22–23. Chiaretto mumbled under his breath, "I feel like I'm in a high school cafeteria." *Id.*, at ¶ 23.

Franco concluded (without any information from Filippetti, who was not a witness to these events) that Chiaretto engaged in inappropriate conduct towards Hiltunen.

*Evidence Concerning Chiaretto's Refusal To Switch Service Positions*

Franco's second conclusion was that Chiaretto was insubordinate to his on-site supervisor, Kilian, when he refused to follow her instructions to switch service positions with Masotta. *Id.*, at ¶ 50. The undisputed facts are that when she was unable to resolve the dispute between Hiltunen and Chiaretto by appealing to a team ethic, Kilian left the bar area and consulted with Filippetti by telephone. *Id.*, at ¶ 24. Filippetti advised Kilian to gain control of the situation by instructing Chiaretto to switch positions. *Id.*, at ¶ 25. Kilian then returned to the service station and asked Chiaretto to switch positions with Masotta. *Id.*, at ¶ 26. Chiaretto did not comply with the request, and instead

asked with whom the request had originated. *Id.,* at ¶ 27. Chiaretto felt that the request was demeaning to him. *Id.,* at ¶ 28. The undisputed evidence establishes that, at this point, Chiaretto was asked by his supervisor to switch and that he neither agreed to do so, nor actually switched. While Chiaretto did not affirmatively state that he would not switch, he nevertheless did not do so.

Kilian again left and consulted with Filippetti by telephone, who reiterated that Kilian should instruct both Chiaretto and Masotta to switch positions. *Id.,* at ¶ 29. Kilian approached the service station again, this time holding her cell phone, and with Filippetti listening, she instructed Chiaretto that he had two options—either to switch positions or to be sent home. *Id.,* at ¶ 30. Masotta approached, and Chiaretto told him that Kilian had instructed him that they needed to switch positions because Hiltunen wanted them to switch and that if they did not do so, they would be sent home for the evening. *Id.,* at ¶ 31. Chiaretto began cleaning out his cash drawer. Docket # 12–5, at 21–22. Masotta indicated he did not wish to become involved in the dispute and said that he was not going to switch. Docket # 11, at ¶ 25. Masotta spoke to Filippetti on the phone and agreed to switch positions. *Id.,* at ¶¶ 37–38. Masotta returned to the bar and told Chiaretto that they needed to switch positions, and they did so. *Id.*

As was the case with his treatment of Hiltunen, the undisputed facts establish that Franco's conclusion that Chiaretto was insubordinate is not dependent in any way upon the testimony of Filippetti. Chiaretto's objection that Masotta rather he is the one that outright refused to switch positions misses the point. Chiaretto was insubordinate before Masotta joined the interaction by failing to switch (or agree to switch) as requested by his supervisor, Kilian. Moreover, in the sec-ond of two written narratives that Chiaretto provided to Franco, Charetto stated that he told Kilian that he would go home rather than switch stations. Docket # 12–7, at 6.

*Evidence Concerning Involvement of Guests In Internal Hotel Matters*

The third conclusion that Franco reached in her investigation was that Chiaretto violated company policy by involving guests in internal hotel matters. Docket 311, at ¶ 50. Hotel policy prohibits employees from discussing confidential company or hotel matters with customers, or in any areas where customers could overhear the conversation. Docket # 13–3, at 34. Chiaretto told a guest (in response to an inquiry from a guest about what was wrong) that he might be leaving soon. Docket # 12–2, at 12; Docket # 15, at I.34. Two guests approached Filippetti as she arrived at Bar 10 later in the evening and made statements supportive of Chiaretto and critical of Kilian (statements which did not necessarily indicate that Chiaretto had made them aware of the dispute). Docket # 12–2, at 12; Docket # 11, at 42. In reaching her conclusion that Chiaretto involved guests in the dispute, Franco relied upon Filippetti's account of the guests' statements and her account of what she heard while listening via Kilian's cell phone.

Thus, assuming arguendo that there was evidence that Filippetti harbored age bias against Chiaretto, two of the three bases advanced by Franco and Jorgensen for the termination depend in no way upon evidence originating from Filippetti, while the third basis (his violation of a policy against publicizing of internal hotel matters to guests) did depend upon information received from Filippetti.

*Evidence Concerning Chiaretto's Disciplinary History*

The second basis advanced by Starwood for the termination (in addition to Chiaret-

to's conduct on November 10, 2005) was his lengthy disciplinary history, and in particular the fact that he was on a Day of Decision at the time of the incident which led to his termination. Chiaretto maintains that the entire disciplinary record is tainted by age bias because of the involvement of Filippetti therein.

The record contains some evidence concerning nine separate disciplinary incidents[2] involving Chiaretto (prior to the November 10, 2005 incident which precipitated termination). Chiaretto claims that all of these disciplinary actions "were undertaken by Doreen Filippetti who was his manager at the time." Docket # 16, at ¶ 4. With regard to six of the incidents, the record is otherwise insufficient to determine whether Filippetti was personally uninvolved, had involvement limited to the imposition of discipline in her role as manager, or whether her role also included involvement in the incidents themselves. The record concerning the August 3, 2004, incident involving inappropriate conduct toward a co-worker reveals that Filippetti had no involvement in the incident and that discipline was imposed by another supervisor. The record concerning the remaining two incidents reveals that Filippetti was involved in the incidents themselves and initiated the disciplinary process. In light of Chiaretto's sworn statement, the absence of contrary evidence, and drawing all inferences in his favor, I conclude, for purposes of the motion, that Fillippetti was involved to a significant degree in all but one of the nine prior disciplinary incidents.

*Evidence Concerning Filippetti's Age Bias*

In alleging that Filippetti harbors discriminatory animus, Chiaretto relies upon three statements she made which he interprets as revealing age-related bias.

The undisputed evidence concerning these statements is that in 2001, Bar 10 employee Troy Clarke told Chiaretto that Filippetti had told him that Chiaretto had difficulty remembering the items on the menu. Docket # 11, at ¶ 62. In 2004–2005, Filippetti asked Chiaretto in front of other employees to "check this check," and added, "Carl, we really have to do something about those eyes." Docket # 15, at ¶ 11; Docket # 12–9 at 6, 19. Chiaretto had previously informed Filippetti that he was having difficulty seeing at work. Docket # 11 at ¶ 60. He subsequently had surgery for cataracts in 2006, and he had difficulty seeing in the low light of Bar 10 due to very early cataracts. *Id.* In October, 2005, Filippetti asked Chiaretto to remove air tanks that had accumulated while he was on vacation, and when he responded that he was busy with delivering an order, Filippetti said in front of other workers, "Well, if you are not physically capable of doing it, I will have one of the girls do it." Docket # 11 at ¶ 63; Docket # 15 at ¶ 63; Docket # 12–9 at 7. Chiaretto was having difficulties with his back at the time of the incident and was conscious of the need to be careful when lifting heavy objects, but was capable of lifting the tanks. Docket # 12–9 at 8; Docket # 15 at ¶ 63.

---

2. The nine incidents, listed in the defendant's statement of undisputed facts, Docket # 11 at ¶ 11, involved: bank left unattended, 6/18/03; failed to turn in all cash from his bank, 4/12/04; inappropriate conduct toward a co-worker, 8/3/04 (resulting in Day of Decision upon conclusion of investigation, 11/04); failure to charge customer for drinks, 8/10/04; inappropriate conduct toward co-worker, 9/9/04; violation of cash handling policy, 9/30/04; failure to charge customer. 10/18/04; insubordination, 7/14/05; leaving work area without permission, 7/26/05.

None of the three statements are directly connected to any of the discipline described above that led to the Day of Decision warning, nor to the events of November 10, 2005.

## DISCUSSION

In light of this factual record, I turn to the merits of Starwood's Motion. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Rogan v. City of Boston*, 267 F.3d 24, 26 (1st Cir. 2001) (citing Fed.R.Civ.P. 56(c)). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving

party's favor." *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993).

Chiaretto's only remaining claim is for discrimination on the basis of age, in violation of M.G.L c. 151B. He advances no federal claim (with this Court's jurisdiction arising from the diversity of the Parties' citizenship). Under Massachusetts law, Chiaretto must present evidence from which a reasonable jury could find: (1) that he was age forty or over; (2) that he was terminated or otherwise subjected to adverse employment action; (3) that Starwood held an age-based discriminatory animus; and, (4) that that discriminatory animus caused his termination. *See Lipchitz v. Raytheon Co.*, 434 Mass. 493, 506–508, 751 N.E.2d 360 (2001); *Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, 116–118, 731 N.E.2d 1075 (2002).

Starwood does not dispute that Chiaretto meets his burden with respect to the first two elements (qualifying age, and termination). In the absence of direct evidence as to the final two elements described above (pretext and causation),[3] Chiaretto may prove those elements by inference, based upon the three-stage analysis initiated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36

---

**3.** Chiaretto does assert that he has direct evidence of discrimination in the form of statements made by Frank Caliguire, who was the General Manager of the hotel between June 3, 1998, and March 10, 2001. In August, 1998, Caliguire is alleged by Chiaretto to have told Gwen Butler (at that time the manager of Bar 10), that he wanted Chiaretto out of Bar 10 because he was not suitable for the younger crowd the hotel hoped to attract there and did not fit the image they hoped to create. In response, Butler reportedly asserted Chiaretto's value and rebuffed Caliguire's directive. Neither Butler nor Caliguire remained in their respective positions at any relevant time and thus played no role in the decisions concerning Chiaretto. Moreover, more than seven years elapsed between the alleged comments and Chiaretto's termination and the remarks are too remote in time to have any probative value. *See, Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 (1st Cir.2001) (citing *McMillan v. Massachusetts Soc'y for Prev. of Cruelty to Animals*, 140 F.3d 288, 300 (1st Cir.1998)) (remarks by a superior in a position to influence the key decisionmaker could be probative of employer's discriminatory intent, but probativeness is circumscribed if they were made in a situation temporally remote from the date of the employment decision, or ... were not related to the employment decision in question, or were made by non decisionmakers). All three such factors diminishing probative value are present here.

L.Ed.2d 668 (1973), and adopted and applied in a series of Massachusetts cases. *See Knight v. Avon Products, Inc.*, 438 Mass. 413, 420–427, 780 N.E.2d 1255 (2003). At the first stage, of the *McDonnell Douglas* framework, Chiaretto must establish a prima facie case of discrimination by presenting evidence that (1) he was a member of a class protected by M.G.L. c. 151B, (2) he performed his work at an acceptable level; (3) he was terminated; and (4) Starwood filled his position with a similarly or less-qualified person who was substantially younger. *Liljestrand v. First Allmerica Financial Life Ins. Co.*, 66 Mass.App.Ct. 1112 (citing *Knight*, 438 Mass. at 422–424, 780 N.E.2d 1255; *Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 441, 646 N.E.2d 111 (1995). Chiaretto has made out a prima facie case of discrimination.

Again, Starwood concedes two of the four prongs (qualifying age and termination). Neither party has adduced any evidence concerning the fourth prong of the prima facie case. The Court can find no evidence in the record concerning the identity, age, or qualifications of the individual who replaced Chiaretto. Although it recites Chiaretto's prima facie burden, Starwood neither concedes nor contests this point. As the moving party, however, Starwood "has the burden of affirmatively demonstrating the absence of a genuine issue of material fact on every relevant issue, even if [Starwood] would not have the burden on an issue if the case were to go to trial." *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 38, 825 N.E.2d 522 (2005). As to the third prong, Chiaretto need only adduce evidence which, if uncontradicted, would meet his burden. This burden is not onerous (*Id.* at 45, 825 N.E.2d 522, and Chiaretto has satisfied it.

The Parties agree that at the second stage of the *McDonnell Douglas* analysis, Starwood has met its burden of adducing a non-discriminatory reason for his termination (namely, that he was terminated for misconduct). *See Sullivan*, 444 Mass. at 47, n. 17, 825 N.E.2d 522; *Abramian*, 432 Mass. at 117, 731 N.E.2d 1075.

At the third stage, Chiaretto must show that the basis of the employer's decision was unlawful discrimination. *Id.* (citing *Blare*, 419 Mass. at 442–443, 646 N.E.2d 111). Chiaretto must prove by a preponderance of the credible evidence that Starwood's discriminatory animus contributed significantly to his termination, that it was a material and important ingredient in causing it to happen. *Lipchitz*, 434 Mass. at 506, n. 19, 751 N.E.2d 360. If the fact finder is persuaded that one or more of the employer's proffered reasons is false, it may (but need not) infer that the employer is covering up a discriminatory intent, motive or state of mind, satisfying the plaintiff's ultimate burden of proving that the decision was made "because of" the unlawful discrimination. *Id.*, at 501, 751 N.E.2d 360.

The Court concludes that Starwood has established that it is entitled to summary judgment. There is no evidence attributing any bias to the decisionmakers behind Chiaretto's termination, Franco and Jorgensen. The decisionmakers obtained evidence supporting their conclusions that Chiaretto was insubordinate and that he behaved inappropriately toward a coworker (each a basis for termination) independently of information obtained from Filippetti.

Franco and Jorgensen obtained information from Filipetti concerning the third basis for termination (involvement of guests in hotel matters) and concerning Chiaretto's disciplinary history. The only evidence of age-related bias on the part of Filippetti proffered by Chiaretto are three stray remarks. These three remarks are not necessarily age-related. Nonetheless, even drawing all reasonable inferences in

Chiaretto's favor to treat the remarks as age-related remarks suggestive of impermissible bias, such "isolated or ambiguous remarks, tending to suggest animus based on age are insufficient, standing alone, to prove an employer's discriminatory intent." *Tardanico v. Aetna Life & Cas. Co.,* 41 Mass.App.Ct. 443, 450, 671 N.E.2d 510 (1996) (quoting *Fontaine v. Ebtec Corp.,* 415 Mass. 309, 314 n. 7, 613 N.E.2d 881 (1993)). Here, the Filippetti remarks stand alone. As was the case in *Tardanico,* "nothing beyond the [Filippetti] comments discussed and his own age suggest that the reasons given by [Starwood] for discharging [Chiaretto] are a pretext." This is especially so where the remarks at issue were not made in relation to the employment decision at issue (in fact, the remark concerning Chiaretto's inability to remember menu items came four years earlier) and where the remarks were made by persons other than the decisionmakers. *See, e.g., Straughn,* 250 F.3d at 36 ("although statements directly related to the challenged employment action may be highly probative in the pretext inquiry, mere generalized 'stray remarks,' arguably probative of bias against a protected class, normally are not probative of pretext absent some discernible evidentiary basis for assessing their temporal and contextual relevance."); *Tuttle v. Brandeis Univ.,* 2002 WL 202470, *8 (Mass.Super.Ct. Feb. 4, 2002) (Gants, J.), aff'd as amended by 60 Mass.App.Ct. 1119, rev. denied, 441 Mass. 1106, 806 N.E.2d 103 (March 31, 2004) ("Stray remarks in the workplace, statements by people without the power to make employment decisions, and state-

ments made by decision makers unrelated to the decisional process itself do not suffice to satisfy the plaintiff's threshold burden in these cases") (quoting *Wynn & Wynn, P.C. v. Massachusetts Commission Against Discrimination,* 431 Mass. 655, 667, 729 N.E.2d 1068 (2000)).

Finally, Chiaretto contends that his termination results not only from Filippetti's age bias, but the Hotel's desire to attract a young crowd to Bar 10 by, inter alia, employing a staff in their twenties and thirties rather than a longtime grey-haired bartender in his early sixties (Chiaretto). While Chiaretto raises a legitimate concern, the undisputed facts fail to support the claim in this case. The conversion to a "younger" bar occurred in 1998, seven years before Chiaretto's termination and five years prior to the first disciplinary incident leading ultimately to the Day of Decision. The one manager who allegedly stated that Chiaretto must leave due to the new orientation (see n. 3, *supra*) did not terminate Chiaretto, did not discipline Chiaretto, and left Starwood before any of the events relevant to the pending claim occurred. The only evidence of age bias arises from the three stray remarks by Filippetti.

CONCLUSION

For the foregoing reasons, I RECOMMEND that the Defendant's Motion for Summary Judgment (Docket # 10) be ALLOWED.[4]

---

4. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommenda-

tions, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v.*

Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also, Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).